UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| _____ ) | | |
| | ) | |
| Rear Adm. James J Carey [Ret] | ) | |
| 6022 Knights Ridge Way | ) | |
| Alexandria, VA 22310 | ) | |
| | ) | |
| Kelly S. Eustis | ) | |
| 1431 Q Street | ) | |
| Apt. 130 | ) | |
| Sacramento, California 95811 | ) | |
| | ) | |
| National Defense Political | ) | |
| Action Committee | ) | |
| 6022 Knights Ridge Way | ) | |
| Alexandria, VA 22310 | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Case No. _____ |
| | ) | |
| FEDERAL ELECTION COMMISSION | ) | |
| 999 E Street, NW | ) | |
| Washington, DC 20463, | ) | |
| | ) | |
| Defendant. | ) | |
| _____) | | |

_____

VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
_____

Plaintiffs Retired Admiral James Carey, Kelly S. Eustis, and the National Defense

Political Action Committee ("National Defense PAC") bring this action for declaratory

and injunctive relief, and complain as follows:

**INTRODUCTION**

1. This case challenges laws that, as interpreted and applied by the Federal Election Commission, abridge the freedom of speech and association guaranteed under the First Amendment to the Constitution.  These challenges are brought as applied against 2 U.S.C. §§ 441a(a)(1)(C) and 441a(a)(3).  National Defense Political Action Committee ("National Defense PAC") and its donors' First Amendment rights are infringed by laws enforced and interpreted by the Federal Election Commission that prohibit it from soliciting and accepting funds solely for the purpose of making independent expenditure communications from one bank account while maintaining a separate bank account to accept source and amount limited contributions to fund similarly limited contributions pursuant to § 441a(a)(1)(C).

2. Plaintiff Kelly S. Eustis is protected under the First Amendment to the United States Constitution to make contributions to organizations that share his views on public policy and candidates for public office.   Wishing to exercise that right, Plaintiff Kelly S. Eustis would like to make contributions to National Defense PAC in amounts greater than $5,000 to fund its independent advocacy to support election of military veterans who support limited government to federal office. National Defense PAC is a non-connected political committee that would like to exercise its right to separately receive funding to make contributions to, and support its independent expenditure advocacy of, military veterans running for federal office.

3.  In 2009, the District of Columbia Circuit Court of Appeals recognized plaintiffs'
    rights under the First Amendment. Non-connected political action committees,
    like National Defense PAC, have the right to accept unlimited contributions from
    individuals, committees, corporations, and unions to make independent
    expenditures. Non-connected political action committees, like National Defense
    PAC, have the concurrent right to accept amount and source limited contributions
    from individuals and other committees for the purpose of making candidate
    contributions under 2 U.S.C. § 441a(a)(2)(A).  Pursuant to *EMILY's List v.*
    *Federal Election Commission,* 581 F.3d 1 (D.C. Cir. 2009), non-connected
    political action committees, like National Defense PAC, do not lose their rights by
    choosing to exercise them.  Individuals, in turn, have the reciprocal right to make
    contributions to organizations to associate with and amplify their voice. *Id.* This
    last term, the U.S. Supreme Court recognized the right of corporations to speak
    out about candidates and elections as being fully protected under the First
    Amendment. *Citizens United v. FEC*, 130 S.Ct. 876 .(2010)

4.  To date, the Federal Election Commission has failed to implement the ruling of
    the D.C. Circuit Court of Appeals and the United States Supreme Court as
    pertains to these rights and in particular these plaintiffs.  This occurred most
    recently in the FEC's failure to grant an affirmative response to plaintiffs'
    advisory opinion request seeking a declaration that its actions, which accord with
    nearly identical facts as that in *EMILY's List* and *Citizens United*, would be legal
    under the Commission's purview.  Because of this, National Defense PAC had to
    forgo its speech during the 2010 electoral timeframe.  It is presently stymied in

being able to accept contributions and speak out about the upcoming 2012 election cycle, candidates for office, and issues of the day.

5. The FEC has failed to abide by a controlling opinion for identical issues of law concerning almost-identical conduct issued by the District of Columbia Circuit Court of Appeals.   *See EMILY's List.*   581 F.3d 1.  This infringes the constitutionally protected rights of plaintiffs – average American speakers – causing injuries by forcing them to seek judicial relief each time they wish to associate and speak freely.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over this case pursuant to 28 U.S.C. § 1331 and 2201 as a challenge arising under the First Amendment to the Constitution of the United States, the Federal Election Campaign Act, and the Declaratory Judgment Act, 28 U.S.C. §§ 2201-02

7. Venue is proper in this Court under 28 U.S.C. §1391(e) because Defendant is an entity of the United States Government.

## PARTIES

**8.**  Plaintiff Rear Admiral [retired] James J. Carey is a registered voter and the founder and treasurer of National Defense PAC and has served in that capacity since 2000.  He resides in Alexandria, Virginia.

**9.**  Plaintiff Kelly Eustis is a registered voter who resides in Sacramento, California.

**10.** Plaintiff National Defense PAC is a non-partisan, non-connected political action committee registered with the Federal Election Commission with its principal mailing address in Washington, DC.

4

**11.** The FEC is the federal agency charged with enforcement of the Federal Election Campaign Act ("FECA") and is located in Washington, D.C.

## STATEMENT OF FACTS

12. A group of military veterans established National Defense PAC with the desire to promote shared patriotic values in government.  National Defense PAC advocates in favor of limited government, upholding a national commitment to this nation's veterans, and publicly defends the rights of American soldiers.  In this role, National Defense PAC raises and expends funds in support of candidates for federal office who are military veterans and agree with its values.  Such funds are raised subject to the amount and source limits detailed at 2 U.S.C. § 441a(a)(1)(C).  National Defense PAC makes contributions to candidates for federal office up to the applicable limit and makes independent expenditures in support or opposition of candidates.

13. In the wake of what most legal experts have deemed a sea change in election law through *Citizens United v. FEC*, 130 S.Ct. 876 (2010), *SpeechNow.org v. Federal Election Commission,* 599 F.3d 686 (D.C. Cir 2010), and *EMILY's List v. Federal Election Commission*, 581 F.3d 1 (D.C. Cir. 2009), plaintiffs hoped to secure and use the fullest extent of their recently recognized, but always existing, First Amendment rights in two separate ways.  First, National Defense PAC sought to engage in independent expenditure campaigns, that is, campaigns advocating the election or defeat of clearly identified candidates for federal office.  Part and parcel of National Defense PAC's ability to engage in this speech is in its ability to raise funds to produce independent expenditures due to the cost of

advertisements, airtime, and print media.  Thus, National Defense PAC sought, as recognized in *EMILY's List* and elsewhere, to be free of contribution limits for contributions given for its independent expenditure campaigns.  At the same time, Kelly S. Eustis desired to associate and speak with National Defense PAC by giving more than $5,000 per calendar year to fund independent expenditure campaigns.  National Defense PAC sought to maintain a separate bank account from which to accept contributions for candidates subject to source and amount limits.

14. While the *Speechnow*, *EMILY's List*, and *Citizens United* courts could not have been clearer protecting these rights, the FEC continues to stonewall and ignore these rulings, causing continued injuries to the speakers before this court.

### The Advisory Opinion Request

15. On August 11, 2010, National Defense PAC submitted an advisory opinion request ("AOR"), attached as EXHIBIT A, to the FEC pursuant to 2 U.S.C. § 437f.  This request asked whether its actions would be lawful if it:

    a. Accepted unlimited contributions from individuals, other political committees, corporations, and unions for the express purpose of making independent expenditures, including paying any or all of its own administrative and operating expenses, and

    b. Accepted contributions from individuals and other political committees only, subject to the limits at 2 USC §§441a(a)(l)(C) and (2)(C), to expend as campaign contributions to candidates, pursuant to 2 USC §441a(a)(2), and

    c. Recorded and segregated all such contributions by type and maintained separate bank accounts for each type, applying for the purpose of campaign contributions only those contributions expressly made for that purpose as indicated by the contributor at the time of the contribution and subject to the limits at 2 USC §§441a(a)(l)(C) and (2)(C).

16. Pursuant to 11 C.F.R. § 112.1, the FEC accepted the AOR for review, assigned it AOR number 2010-20, and posted it on the FEC's website for public commentary on August 11, 2010.

17. On September 17, 2010, the FEC's general counsel issued a draft advisory opinion in response to National Defense PAC's AOR. The draft advisory opinion, Draft A, concluded that contributions to National Defense PAC made to finance its independent expenditures would be subject to the contribution limits of 2 U.S.C. § 441a(a)(1)(C) and related FEC regulations.  This "Draft A" advisory opinion is included as EXHIBIT B.

18. An alternate draft, Draft B, was issued on September 21 and concluded that contributions to National Defense PAC made to finance its independent expenditures would not be subject to the contribution limits of 2 U.S.C. § 441a(a)(1)(C) and related FEC regulations.  The alternative "Draft B" advisory opinion is included as EXHIBIT C.

19. On September 23, 2010, at an open meeting of the FEC, the Commission failed by a vote of 2-3 to approve Draft A.  The Commission also failed by a vote of 3-2 to approve Draft B.

20. Pursuant to 11 C.F.R. § 112.4(a), the FEC certified on September 28, 2010 that it was unable to approve National Defense PAC's AOR because it lacked the necessary four votes to approve the AOR.  This certification is included as EXHIBIT D.  The FEC's failure to affirmatively provide a four-vote, binding advisory opinion in response to National Defense PAC's request carries the equivalent legal effect that its proposed actions would be invalid under the FECA

and subject the organization to civil or criminal penalties under 2 U.S.C. § 437g for speaking out about candidates and otherwise engaging in political association.

21.  The Commission's refusal to issue an advisory opinion deprives plaintiffs that requested it of a legal reliance defense that they could otherwise receive under 2 U.S.C. § 437f(c).  The advisory opinion process in this matter is complete and deprived plaintiffs of a legal right – to engage freely in constitutionally protected speech and association.  *See Unity 08 v. Federal Election Commission*, 596 F.3d 861 (D.C. Cir. 2010) ("parties are commonly not required to violate an agency's legal position and risk an enforcement proceeding before they may seek judicial review"); *see also Democratic Senatorial Campaign Committee v. Federal Election Commission*, 918 F.Supp. 1 (D.D.C. 1994).

***Ensuing Harm to Plaintiffs***

22. At the time of filing the advisory opinion request, several primary elections were less than 60 days away.  National Defense PAC filed its request as promptly as possible to ensure that its planned speech and association would be deemed lawful under the FECA and related regulations.  Because the elections were so close upon it, National Defense PAC asked for an expedited advisory opinion request pursuant to 11 C.F.R. § 112.4(b) and 72 Fed. Reg. 32,160 (July 7, 2009).  More than 40 days later, the Commission decided not to issue an advisory opinion.  Given that the FEC could not issue a definitive statement concerning the legality of National Defense PAC's planned actions, it was required to mute itself and curtail its activities during the 2010 election cycle.

23. During the 2010 electoral cycle, National Defense PAC planned to deploy independent expenditure communications targeting several opponents of endorsed candidates nationwide.  While National Defense PAC was free to endorse its preferred candidates, it was not legally permitted to solicit more than $5,000 per calendar year per person to fund independent expenditure campaigns for them. These proposed campaigns included focusing on candidates in the Eighth Congressional District of Michigan, the First Congressional District of Rhode Island, the Eighth Congressional District of Massachusetts, the Ninth Congressional District of New York, and the First Congressional District of Hawaii.  A copy of National Defense PAC's endorsements in these campaigns is included as EXHIBIT E.  Because the FEC did not permit it to accept unlimited contributions to fund its independent expenditures, National Defense PAC was unable to gather the resources necessary to run independent expenditure campaigns and to be heard during the 2010 electoral cycle.

*Ongoing Harm to Plaintiffs*

24. As soon as possible, and certainly before the 2012 primary and general elections, National Defense PAC would like to make independent expenditures from its general fund, in various amounts, expressly advocating for or against clearly identified candidates of its choice.  A specific example of this is included as EXHIBIT F, which includes a proposed advertisement for Newsmax – a popular Internet destination – expressly advocating against the retention of Anthony Weiner in New York's Ninth Congressional District.  This advertisement, with a guaranteed 50,000 views per week, would cost $6,300.00 to run in the months

leading up to the November 2012 elections. The advertisements in question would include a picture of Anthony Weiner along with the call to "defeat Anthony Weiner" – asking users to click on the advertisement to learn more. *See* EXHIBIT F.

25. National Defense PAC would like to make additional independent expenditures in the months leading up to the 2012 primary and general elections based on issues and candidates that present themselves. Without the ability to solicit unlimited contributions to fund such communications, it will not be able to speak during the 2012 electoral season. Without an immediate ruling from this court, it will not have the necessary time to fundraise and generate support for its message from likeminded individuals.

26. As soon as possible, and certainly before the 2012 primary and general elections, National Defense PAC would like to solicit contributions for its independent expenditures in amounts greater than $5,000.00 per calendar year. National Defense PAC has contacted donors willing to give more than $5,000.00 in single contributions to fund independent expenditures, but has not solicited or accepted such amounts due to the effect of 2 U.S.C. §§ 441a(a)(1)(C) and 441a(a)(3). A specific example of this is included as EXHIBIT G, a letter of intent from Kelly S. Eustis, who wishes to donate $6,300.00 to help fund independent expenditure communication campaigns against Anthony Weiner but cannot due to the current operation and interpretation of the law by the FEC.

27. As soon as possible, and certainly before the 2012 primary and general elections, Kelly S. Eustis would like to make a $6,300.00 contribution to National Defense

PAC to help fund independent expenditure communications against Anthony Weiner in the Ninth Congressional District of New York. But for operation and interpretation of 2 U.S.C. §§ 441a(a)(1)(C) and 441a(a)(3), Kelly S. Eustis would make this contribution.

28. As soon as possible, and certainly before the 2012 primary and general elections, National Defense PAC would like to make contributions to candidates for federal office subject to source and amount limits found at 2 U.S.C. §§ 441a(a)(1)(C) and (2)(C). Because it plans to make unlimited independent expenditures while receiving unlimited contributions for them, current interpretation of the law by the FEC prohibits National Defense PAC from making source and amount limited contributions out of a separate bank account.

29. As soon as possible, and certainly before the 2012 primary and general elections, National Defense PAC would like to receive contributions to fund contributions, subject to source and amount limits found at 2 U.S.C. §§ 441a(a)(1)(C) and (2)(C), to provide to favored candidates for federal office. Because it plans to make unlimited independent expenditures while receiving unlimited contributions for them, current operation and interpretation of the law by the FEC prohibits it from concurrently soliciting and receiving limited contributions. Were it permissible, National Defense PAC would actively fundraise and accept contributions for making contributions.

### National Defense PAC's Structure and Operations

30. National Defense PAC is an unincorporated association in Virginia, registered as a non-connected political action committee with the FEC. The PAC's bylaws

require it to operate independently of political candidates, committees, and political parties. *See* EXHIBIT H. In accord with its bylaws, National Defense PAC does not coordinate any of its activities with candidates or national, state, district or local political party committees or their agents as defined in 2 U.S.C. §§ 441a(a)(7)(B) and (C) and 11 C.F.R. § 109. *Id.* In addition, National Defense PAC does not and will not coordinate its activities with other political committees.

31. National Defense PAC's expenditures for advertisements will be "independent expenditures" under 2 U.S.C. § 431(17) because they will be expenditures by a person "expressly advocating the election or defeat of a clearly identified candidate" that are "not made in concert or cooperation with or at the request or suggestion of such candidate, the candidate's authorized [campaign] committee, or their agents, or a political party committee or its agents." An example of a proposed future independent expenditure is included as EXHIBIT F.

32. National Defense PAC has not yet solicited or accepted any contributions in excess of the $5000 limit imposed by 2 U.S.C. § 441a(a)(1)(C), because doing so would subject it to civil and criminal penalties.

33. The contribution limits contained in 2 U.S.C. § 441a(a)(1)(C) and 441a(a)(3) prevent National Defense PAC from accepting the contributions from Kelly S. Eustis as described in paragraphs 26 and 27 above.

34. The contribution limits contained in 2 U.S.C. § 441a(a)(1)(C) and 441a(a)(3) prevent National Defense PAC from soliciting additional contributions above those limits.

35. Even if National Defense PAC could somehow raise enough money in increments of $5000 or less per donor per calendar year to pay for its advertisements, the contribution limits contained in 2 U.S.C. §§ 441a(a)(1)(C) and 441a(a)(3) would, by making it harder to gather funds, limit the type and number of times it could run advertisements.  The limits would also diminish National Defense PAC's ability to run additional advertisements concerning other federal candidates in other races.  This is precisely the muting effect the law had on National Defense PAC's operations during the 2010 electoral cycle as described in paragraphs 22-23.  This constitutes a direct impediment on National Defense PAC's association and speech.

36. National Defense PAC will face a credible threat of prosecution if it solicits or accepts contributions in excess of the limits contained in 2 U.S.C. §§441a(a)(1)(C) and 441a(a)(3) to fund its advertisements as described herein.

***Rear Admiral Carey and Kelly S. Eustis' Activities***

37. The contribution limits contained in 2 U.S.C. §§ 441a(a)(1)(C) and 441a(a)(3) prevent plaintiff Kelly S. Eustis from making the contributions he wants to make as described in paragraphs 26 and 27 above, and thus prevents him from associating with National Defense PAC and with other like minded individuals, as well as speaking, for the purpose of producing and distributing the advertisements described herein.

38. Similarly, the contribution limits found in 2 U.S.C. §§ 441a(a)(1)(C) and 441a(a)(3) prevent Rear Admiral Carey, as an agent of National Defense PAC, from soliciting or accepting contributions as described in paragraphs 24-26 above.

39. Plaintiff Kelly S. Eustis will face a credible threat of prosecution if he makes contributions to National Defense PAC in excess of the limits contained in 2 U.S.C. §§ 441a(a)(1)(C) and 441a(a)(3) to fund National Defense PAC's advertisements as described herein.  Plaintiff Kelly S. Eustis should not have his contributions to National Defense PAC count against the amount of money he may contribute to federal candidates under 2 U.S.C. § 441a(a)(3).

40. Plaintiff Rear Admiral Carey will face a credible threat of prosecution if he solicits or accepts contributions to National Defense PAC in his role as treasurer in excess of the limits contained in 2 U.S.C. §§ 441a(a)(1)(C) and 441a(a)(3) to fund National Defense PAC's advertisements as described herein.

## COUNT 1
### Contribution Limits — National Defense PAC

41. Plaintiffs reallege and incorporate by reference all of the allegations contained in all of the preceding paragraphs.

42. The application of the contribution limits contained in 2 U.S.C. §§ 441a(a)(1)(C) and 441a(a)(3) to National Defense PAC's independent expenditure communications severely burden its right to freedom of speech.  In application, these provisions act as expenditure limits, denying National Defense PAC the ability to speak effectively and efficiently.

43. 2 U.S.C. §§ 441a(a)(1)(C) and 441a(a)(3) are the functional equivalent of a speech ban imposed by the FEC against certain groups of individuals.  As the Supreme Court noted in *Buckley v. Valeo*, 424 U.S. 1, 19 n.18 (1976), "Being free to engage in unlimited political expression subject to a ceiling on expenditures is like being free to drive an automobile as far and as often as one desires on a single

tank of gasoline."   The FEC imposes this limit against certain groups of individuals wishing to speak out about candidates for public office without constitutional support.

44. National Defense PAC has prepared advertisements calling for the defeat of candidates for federal office and wishes to distribute those advertisements in the state and district in which those candidates are running for office.   But for operation of the law, National Defense PAC is prepared to run independent expenditures in the Ninth Congressional District of New York to defeat Anthony Weiner.   *See* EXHIBIT F.

45. National Defense PAC would like to produce and broadcast additional advertisements calling for the election or defeat of candidates for federal office in the 2012 election cycle and in future election cycles.

46. National Defense PAC has a donor who is ready, willing, and able to donate more than $5000 each to finance its advertisements calling for the election or defeat of candidates for federal office as described herein.

47. Under 2 U.S.C. §§ 431(8), 441a(a)(1)(C), 441a(a)(3), and the FEC's regulations, as interpreted and applied by the FEC, in contradistinction to the First Amendment and opinions of the D.C. Circuit Court of Appeals in *EMILY's List v. FEC* and *SpeechNow.org v. FEC,* National Defense PAC is prohibited from accepting these and other contributions that exceed the limits contained in 2 U.S.C. §§ 441a(a)(1)(C) and 441a(a)(3) that are made to finance its advertisements as described herein.

48. The application of the contribution limits contained in 2 U.S.C. §§ 441a(a)(1)(C) and 441a(a)(3) to National Defense PAC's independent expenditure communications severely burden its right to associate with its potential donors by placing constitutionally unjustified limits on how much money it may receive from likeminded individuals.

49. National Defense PAC poses no threat of corruption or its appearance because all of its contributions to candidates, party committees or the hard money accounts of other PACs will be made from a separate account comprised of funds received from individuals in amounts of $5000 or less.  It will pay the expense of administering its contributions to candidates from the same account.  Independent expenditures will be made from a separate account.

50. The application of contribution limits contained in 2 U.S.C. §§ 441a(a)(1)(C) and 441a(a)(3) to National Defense PAC violates its contributors' rights to freedom of speech and association under the First Amendment.  By denying National Defense PAC contributors the meaningful ability to associate and speak through the act of contributing, its constitutional rights are abridged.

51. As recognized by the District of Columbia Circuit Court of Appeals, associations of individuals wishing to speak out about candidates for federal office and issues of the day are "constitutionally entitled to raise and spend unlimited money in support of candidates for elected office . . . ."  *EMILY'S List*, 581 F.3d at 9.

52. It is never constitutionally permissible to restrict the amount of money individuals may contribute to an organization that makes independent expenditures.  *See, e.g., EMILY'S List,* 583 F.3d 1*; SpeechNow.org,* 599 F.3d 686*; N.C. Right to Life, Inc.*

*v. Leake*, 525 F.3d 274 (4th Cir. 2008).  As a result, 2 U.S.C. §§ 441a(a)(1)(C), 441a(a)(3), and the FEC's regulations, as interpreted and applied by the FEC must necessarily fail to survive constitutional scrutiny.

### COUNT 2
### Contribution Limits—Individual Plaintiffs

53. Plaintiffs reallege and incorporate by reference all of the allegations contained in all of the preceding paragraphs.

54. Kelly S. Eustis is ready, willing, and able to contribute more than $5000 to finance National Defense PAC's advertisements as described herein.  *See* EXHIBIT G (Letter of Intent, Kelly S. Eustis).

55. Kelly S. Eustis would like to make additional contributions in the future to finance National Defense PAC's advertisements as described herein and as may arise in future circumstances.

56. Under 2 U.S.C. §§ 441a(a)(1)(C) and 441a(a)(3) and the FEC's regulations, as interpreted and applied by the FEC, in contradistinction to the First Amendment and opinions of the D.C. Circuit Court of Appeals in *EMILY's List* and *SpeechNow.org,* Kelly S. Eustis is prohibited from making any contributions to National Defense PAC that would exceed $5000 in any calendar year that are made to finance its advertisements calling for the election or defeat of candidates for federal office.

57. The application of the contribution limits contained in 2 U.S.C. §§ 441a(a)(1)(C) and 441a(a)(3) severely burdens Kelly S. Eustis' rights to associate with National Defense PAC, as well as speak, and its other potential donors for the purpose of calling for the election or defeat of candidates for federal office.  As noted by the

17

District of Columbia Circuit Court of Appeals, if one person is "constitutionally entitled to spend $1 million to run advertisements supporting a candidate (as *Buckley* held), it logically follows that 100 people are constitutionally entitled to donate $10,000 each to a non-profit group that will run advertisements supporting a candidate." *EMILY's List*, 581 F.3d at 10.

58. The application of the contribution limits contained in 2 U.S.C. §§ 441a(a)(1)(C) and 441a(a)(3) severely burdens Kelly Eustis' right to freedom of speech.  Indeed, organizations like National Defense PAC "offer an opportunity for ordinary citizens to band together to speak on the issue or issues most important to them." *EMILY's List*, 581 F.3d at 11 (internal citation omitted).

59. Kelly S. Eustis' contributions to National Defense PAC pose no threat of corruption or its appearance because National Defense PAC's contributions to candidates, party committees or the hard money accounts of other PACs will be made from a separate account comprised of funds received from individuals in amounts of $5000 or less.  National Defense PAC will pay the expense of administering its contributions to candidates from the same account.  Independent expenditures will be made from a separate account.

60. The application of contribution limits contained in 2 U.S.C. §§ 441a(a)(1)(C) and 441a(a)(3) as applied to National Defense PAC and to Kelly S. Eustis and Rear Admiral Carey violate their right to freedom of speech and association under the First Amendment.

**PRAYER FOR RELIEF**

Wherefore, Plaintiffs pray for the following relief:

1.      A declaratory judgment that the contribution limits contained in 2 U.S.C. §§ 441a(a)(1)(C) and 441a(a)(3), as well as any applicable rules and regulations regarding these provisions, are unconstitutional as applied to National Defense PAC;

2.      A declaratory judgment that the contribution limits contained in 2 U.S.C. §§441a(a)(1)(C) 441a(a)(3), as well as applicable rules and regulations regarding those provisions, are unconstitutional as applied to any contributions that the individual Plaintiffs and other supporters wish to make to National Defense PAC for its independent advertisements as described herein;

3.      Preliminary and permanent injunctions enjoining Defendant FEC from enforcing §§441a(a)(1)(C), and 441a(a)(3), as well as any applicable rules and regulations regarding those provisions, against National Defense PAC;

4.      Preliminary and permanent injunctions enjoining Defendant FEC from enforcing 2 U.S.C. §§ 441a(a)(1)(C) and 441a(a)(3), as well as any applicable rules and regulations regarding those provisions, against the individual Plaintiffs and National Defense PAC's other supporters for any contributions they may make to National Defense for independent advertisements as described herein;

5.      An award of nominal damages of $1 for the violation of Plaintiffs' constitutional rights;

6.      Costs and attorney's fees pursuant to any applicable statute or authority;

7.      Any other relief that the Court deems just and appropriate.

Date this 28th day of January, 2011.

## CAREY VERIFICATION

I, Rear Admiral James Carey, declare as follows:

1. I am the founder and treasurer of National Defense PAC.

2. I have personal knowledge of National Defense PAC and its operations, including those set out in this Complaint, and if called upon to testify I would testify competently as to matters stated herein.

3. I verify under penalty of perjury under the laws of the United States of America that the factual statements in this Complaint concerning National Defense PAC are true and correct. Executed on January 20, 2011.

Admiral James Carey

## EUSTIS VERIFICATION

I, Kelly S. Eustis, declare as follows:

1. I am an individual residing in Sacramento, California.

2. I wish to make donations to National Defense PAC as described in this Verified Complaint and have personal knowledge of my desires to support the National Defense PAC, including those set out in this Complaint, and if called upon to testify I would testify competently as to matters stated herein.

3. I verify under penalty of perjury under the laws of the United States of America that the factual statements in this Complaint concerning my own support of National Defense PAC and wishes to donate to the organization are true and correct. Executed on January 25, 2011.

Kelly S. Eustis

Respectfully submitted,

Dan Backer (DC Bar No. 996641)
PO Box 75021
Washington, DC 20013
202.210.5431
dbacker@dbcapitolstrategies.com

Stephen M. Hoersting*
700 E Schantz Ave
Dayton, OH 45419
937.623.6102
hoersting@gmail.com

Benjamin T. Barr*
10737 Hunting Lane
Rockville, MD 20850
240.863.8280
benjamin.barr@gmail.com

*Motions for *Pro Hac Vice* to be filed.