# EXHIBIT A
Advisory Opinion Request 2010-20



PAC RECEIVED
FEDERAL ELECTION
COMMISSION GRASSROOTS • ADVOCACY • NON-PROFIT

2010 AUG 11  PM 2: 15

OFFICE OF GENERAL
COUNSEL

August 11, 2010

**By Courier**

Thomasenia Duncan, Esq.
General Counsel
Federal Election Commission
999 E Street NW
Washington, DC 20013

AOR 2010-20

**Re:  National Defense PAC Advisory Opinion Request**

Dear Ms. Duncan:

Pursuant to 2 USC §437(f), National Defense PAC (NDPAC) requests an advisory opinion from
the Federal Election Commission (FEC).  This request addresses a highly significant and time
sensitive issue and pertains to communications referencing clearly identified federal candidates
and contributions to those candidates, some with primary elections less than 60 days away.
NDPAC requests the FEC expedite this request and render an opinion within 20 days pursuant to
74 Fed. Reg. 32,160 (July 7, 2009) or, in the alternative, within 30 days under its general
expedited procedures.


## I.  INTRODUCTION

This request is to verify that the planned conduct of NDPAC is within the scope of the law as it
stands subsequent to *Citizens United v FEC*, 130 S.Ct. 876 (2010) and *SpeechNOW v FEC*, 599
F.3d 686 (D.C.Cir. 2010)(en banc), and in light of recently issued FEC Advisory Opinion (AO)
2010-09 and 2010-11 (July 2010).

NDPAC, a qualified non-connected political action committee (PAC), seeks to confirm that its
conduct shall be lawful if it:

(a) accepts unlimited contributions from individuals, other political committees, corporations,
and unions for the express purpose of making independent expenditures (IEs), including paying
any or all of its own administrative & operating expenses, and

(b) accepts contributions from individuals and other political committees only, subject to the
limits at 2 USC §§441a(a)(1)(C) and (2)(C), to expend as campaign contributions to candidates,
pursuant to 2 USC §441a(a)(2), and



**PAC** • GRASSROOTS • ADVOCACY • NON-PROFIT

(c) records and segregates all such contributions by type and maintains separate bank accounts for each type, applying for the purpose of campaign contributions only those contributions expressly made for that purpose as indicated by the contributor at the time of the contribution and subject to the limits at 2 USC §§441a(a)(1)(C) and (2)(C).

## II. BACKGROUND

NDPAC is a qualified, non-connected PAC that raises and expends funds in support of candidates who (a) are military veterans and (b) agree with the values of NDPAC. NDPAC currently accepts contributions from individuals subject to the amount and source limits at 2 USC §441a(a)(1)(C), and makes contributions to individual federal candidates up to the applicable limit, as well as making independent expenditures from such funds. NDPAC does not accept or intend to accept donations from foreign nationals or government contractors.

In response to the rulings in *Citizens United v FEC*, 130 S.Ct. 876 (2010) and *SpeechNOW v FEC*, 599 F.3d 686 (D.C.Cir. 2010)(en banc), as well as AO 2010-09 and AO 2010-11, NDPAC intends to expand the scope of its activities. NDPAC now intends to accept unlimited contributions from individuals, other political committees, corporations, and unions in order to make independent expenditures. NDPAC will also continue to accept contributions from individuals and other committees pursuant to 2 USC §441a(a)(1)(C) for the purpose of making candidate contributions pursuant to 2 USC §441a(a)(2)(A).

NDPAC intends to verify the source of each contribution and the intent of its use for either independent expenditures or candidate contributions (if from an acceptable source of candidate contribution funds). NDPAC will maintain separate bank accounts and otherwise maintain separate accounting for each pool of funds, and provide full reporting to the FEC of all receipts and expenditures by category. NDPAC will pay administrative or operating costs from either account, but most likely wholly from the independent expenditure account. NDPAC will continue to refuse any contribution from foreign nationals or government contractors.

## III. DISCUSSION

Recent rulings by the Supreme Court in *Citizens United v FEC*, 130 S.Ct. 876 (2010) and the U.S. Court of Appeals for the District of Columbia in *SpeechNOW v FEC*, 599 F.3d 686 (D.C.Cir. 2010)(en banc) have had a significant impact on permissible and Constitutionally protected election related activities. Core to the holding of each ruling, and as cited in AO 2010-09 and AO 2010-11, was *"that independent expenditures, including those made by corporations,*

 **PAC** • GRASSROOTS • ADVOCACY • NON-PROFIT

Page 3

*do not give rise to corruption or the appearance of corruption." Citizens United,* 130 S. Ct at 909; see *SpeechNow,* 599 F.3d at 693.  See also AO 2010-09, page 3, and AO 2010-11, page 3.

Therefore, a corporation or union may, subject to applicable reporting requirements, (a) spend an unlimited amount of treasury funds on IE's, *Citizens United,* 130 S. Ct at 913, (b) spend an unlimited amount of treasury funds to pay some or all of the administrative or operating costs of an IE-only PAC, AO 2010-09 pg. 4 ¶ 1, that need not be an SSF, *id.,* pg. 5 ¶ 6, directly or through contribution to that PAC , *id.,* pg. 5 ¶ 6, and (c) spend an unlimited amount of treasury funds to pay some or all of the administrative or operating costs of an SSF which may conduct IE's and raise funds from its restricted class to contribute to candidates, 2 USC §441b(b)(2)(C).

Individuals or group of individuals may expend unlimited personal funds on IE's themselves, AO 2010-11, pg. 3 ¶ 2, or in contribution to an IE-only PAC, *id.,* pg. 3 ¶ 3, including paying for any or all of the administrative or operating costs of that committee directly or through their contributions.  However, no individual or group of individuals has an equivalent vehicle as an SSF to make unlimited contributions to the administrative or operating expenses of a committee that may raise and expend funds for direct campaign contributions.

As a result, corporations and unions now have greater political rights and greater ability to affect the outcome of elections of federal candidates than any individual and in most cases even very large groups of individuals.  A cursory analysis of FEC data indicates that SSF's (corporations and unions) outnumber non-connected committees (largely grassroots and citizens organizations) by nearly 2-to-1, with an even greater disparity in funds raised and expended.  Further, non-connected committees expend on average 40% of funds raised for administrative or operating expenses, up to 75% for smaller PACs.  SSFs generally have these costs paid by their connected organization, allowing use of virtually all funds raised for direct candidate contributions.

A non-connected political committee has two choices with virtually identical reporting obligations.  It may operate as an IE-only PAC and raise and expend unlimited funds from any corporation, union, or individual for IE's only.  Or, it may operate as a non-IE-only PAC, raise and expend amount-limited contributions from individuals and other political committees only, and make amount-limited direct contributions to candidates as well as unlimited expenditures for IE's.  Either approach requires the same accounting of receipts, sources, and expenditures.

Non-connected PACs must therefore choose between (a) unlimited receipts and unlimited distributions for IE's, and (b) strict limitations on the sources and amounts of receipts in order to enjoy a greater degree of free speech.  In short, speakers are being forced to choose between two forms of protected speech, either of which they may engage in, but not at the same time.

 **PAC** • GRASSROOTS • ADVOCACY • NON-PROFIT

There is no constitutional basis to prohibit a non-connected committee from performing both lawful, constitutionally protected functions – engaging in political speech - at the same time. There is no constitutional basis to restrict political speech such that speakers must sacrifice one mode of speech for another.  There is no constitutional basis to restrict freedom of association such that individuals and entities may not do in concert what they may lawfully do individually.

The Commission has expressly recognized that "*Following Citizens United and SpeechNow, corporations, labor organizations, and political committees may make unlimited independent expenditures from their own funds, and individuals may pool unlimited funds in an independent expenditure-only political committee. It necessarily follows that corporations, labor organizations and political committees also may make unlimited contributions to organizations such as the Committee that make only independent expenditures. Given the holdings in Citizens United and SpeechNow, that "independent expenditures do not lead to, or create the appearance of, quid pro quo corruption," Citizens United, 130 S.Ct. at 910, the Commission concludes that there is no basis to limit the amount of contributions to the Committee from individuals, political committees, corporations and labor organizations.*" AO 2010-11, page 3.

A non-IE-only, non-connected committee has long been able to directly contribute to candidates and, further, expend unlimited amounts on IE's. Therefore, there is clearly no "appearance of or actual quid pro quo corruption," from a PAC performing both functions.  The receipts and expenditures for each function can be separately accounted for through as simple a mechanism as separate bank accounts to insure no funds are used for candidate contributions other than those raised, subject to applicable limits, from individuals and other committees for that purpose.  This eliminates any greater risk of actual or apparent quid pro quo corruption than currently exists.

If both functions are individually constitutionally protected, there is no basis to prohibit them from being conducted at the same time by the same committee, provided that they are separately accounted for.  If funds are raised, received, held, and accounted for separately, they are not susceptible to improper allocation between categories. Therefore, these activities pose no greater risk of apparent or actual quid pro quo corruption than has long existed from non-connected committees making both contributions and IE's.  Prohibiting non-connected committees – the vehicle by which individuals engage in collaborative political speech – from pursuing this proposed course of action would violate individual rights of free speech and free association while providing corporate entities greater political rights than individuals.

 **PAC** • GRASSROOTS • ADVOCACY • NON-PROFIT

Page 5

## IV. QUESTIONS PRESENTED

1. May a non-connected political action committee (a) raise unlimited contributions from individuals, other committees, corporations, and unions to make independent expenditures only, and (b) raise amount and source restricted funds from individuals and other committees only for the purpose of making candidate contributions, provided such receipts are held in separate bank accounts by intended use and separately accounted for in FEC reporting?

2. May a non-connected political action committee pursuing the course of action outlined above allocate any or all of its administrative or operating expenses between its accounts as it sees fit, including paying all expenses from its independent expenditure account?

## V. CONCLUSION

As a result of the rulings in *Citizens United* and *SpeechNow*, and as recognized by the commission in AO 2010-09 and AO 2010-11, the permitted and constitutionally protected conduct of participants in the campaign finance regime administered by the FEC has changed. Participants in this system, specifically the non-connected committee, now enjoy greater protection and range of operations, including to insure that individuals enjoy at least the same political rights and opportunity to engage free political speech as corporations and unions.

NDPAC therefore seeks confirmation that it may pursue the outlined course of action, namely (a) accepting unlimited contributions from individuals, corporations, unions, and other committees to make independent expenditures; (b) accepting limited contributions from individuals and other committees only to make candidate contributions; (c) separately raising, holding, expending, and accounting for these two activities; and (d) reporting all sources of all funds and all expenditures within the FEC reporting structure and adhering to all other applicable FEC regulations.

We would appreciate an expedited response to our request. If you need additional information, please call me at 202-210-5431 or email me at dbacker@DBCapitolStrategies.com.

Sincerely,

Dan Backer, Esq.
Counsel & Assistant Treasurer
National Defense PAC

RECEIVED
FEDERAL ELECTION
COMMISSION

2010 AUG 17 PM 3: 21

OFFICE OF GENERAL
COUNSEL



"Dan Backer"
<DBacker@DBCapitolStrate
gies.com>

08/16/2010 10:03 PM

To  <WPowers@fec.gov>

cc

bcc

Subject  RE: National Defense PAC

Dear Mr. Powers,

1.    I confirm your understanding of my use of that term as per our conversation, except that I would additionally consider an "in-kind" contribution within the scope of a "political contribution" even though not directly made to a candidate or committee, and not an "administrative and operating expense."
2.    Yes, that is correct.

Please feel free to contact me at any time for additional information. Thank you for your time and consideration of our request.

Regards,

Dan Backer, Esq.
202-210-5431

## DB Capitol Strategies
*PAC * GRASSROOTS * ADVOCACY * NONPROFIT*
Home of The Strategist, a monthly PAC update
www.DBCapitolStrategies.com

**From:** WPowers@fec.gov [mailto:WPowers@fec.gov]
**Sent:** Monday, August 16, 2010 5:19 PM
**To:** dbacker@DBCapitolStrategies.com
**Subject:** National Defense PAC

Dear Mr. Backer:

Following up on our telephone conversation from this afternoon (Aug. 16, 2010) regarding your advisory opinion request, please confirm our understanding of the following facts:

1. On page 1 of the request, and elsewhere, when you use the term "administrative and operating expenses" you mean: all expenditures or disbursements that are not direct contributions to candidates, political parties, or political committees, or that are not direct independent expenditures (or other electoral-based disbursements). These expenses would include such items as salary, rent, advertising expenses related to running the PAC, telephone bills, etc. It would also include fundraising costs, which would be paid out of the general accounts of the PAC unless a commission was paid directly from the funds raised.

2. The PAC is a volunteer-based organization, and at this time does not have a physical office. It is incorporated in Virginia, and receives its mail at a post office box in the District of Columbia.

Thank you very much.

_____

William A. Powers
Attorney, Office of the General Counsel
Federal Election Commission
999 E Street, NW
Washington, DC 20463
Tel: (202) 694-1631
Fax: (202) 219-

# EXHIBIT B

FEC Advisory Opinion 2010-20, Draft "A"

## AGENDA DOCUMENT NO. 10-6D-B



FEDERAL ELECTION COMMISSION
Washington, DC 20463

RECEIVED
FEDERAL ELECTION
COMMISSION
SECRETARIAT

2010 SEP 23 A 9: 26

# AGENDA ITEM

September 23, 2010     **For Meeting of** 9-23-10

### MEMORANDUM

**SUBMITTED LATE**

TO:              The Commission

FROM:        Christopher Hughey $CH$ (by RCS)
                   Acting General Counsel

                   Rosemary C. Smith $RCS$
                   Associate General Counsel

                   Robert M. Knop $RMK$
                   Assistant General Counsel

                   William A. Powers $WAP$
                   Attorney

Subject:       Draft AO 2010-20 (NDPAC) — Revised Draft A

        Attached is Revised Draft of the subject advisory opinion. We have been asked
to place this draft on the agenda for September 23, 2010.

Attachment

AO 2010-20
Revised Draft A
Page 8

1      This response constitutes an advisory opinion concerning the application of the

2   Act and Commission regulations to the specific transaction or activity set forth in your

3   request. *See* 2 U.S.C. 437f. The Commission emphasizes that, if there is a change in any

4   of the facts or assumptions presented, and such facts or assumptions are material to a

5   conclusion presented in this advisory opinion, then the requestor may not rely on that

6   conclusion as support for its proposed activity. Any person involved in any specific

7   transaction or activity which is indistinguishable in all its material aspects from the

8   transaction or activity with respect to which this advisory opinion is rendered may rely on

9   this advisory opinion. *See* 2 U.S.C. 437f(c)(1)(B). Please note the analysis or

10  conclusions in this advisory opinion may be affected by subsequent developments in the

11  law including, but not limited to, statutes, regulations, advisory opinions, and case law.

12  The cited advisory opinions are available on the Commission's Web site at

13  http://saos.nictusa.com/saos/searchao.

14

---

"[I]f an individual or association was permitted to fund the entire operation of a political
committee, all moneys solicited by that committee could be converted into contributions,
the use of which might well be dictated by the committee's main supporter. In this
manner, political committees would be able to influence the electoral process to an extent
disproportionate to their public support and far greater than the individual or group that
finances the committee's operations would be able to do acting alone. In so doing, they
could corrupt the political process in a manner that Congress, through its contribution
restrictions, has sought to prohibit."

453 U.S. at 199 n.19.

1   ADVISORY OPINION 2010-20
2
3   Dan Backer, Esq.
4   DB Capitol Strategies
5   P.O. Box 75821                                **REVISED DRAFT A**
6   Washington, D.C. 20013

7

8   Dear Mr. Backer:

9       We are responding to your advisory opinion request on behalf National Defense

10   PAC ("NDPAC"), concerning the application of the Federal Election Campaign Act of

11   1971, as amended (the "Act"), and Commission regulations to a proposed plan to accept

12   unlimited contributions from individuals, other political committees, corporations, and

13   labor organizations to fund independent expenditures from a separate bank account and to

14   allocate the cost of all of the Committee's administrative and operating expenses between

15   accounts as it sees fit.  The Commission concludes that the Act and Commission

16   regulations do not permit NDPAC's proposed course of action.

17   ***Background***

18       The facts presented in this advisory opinion are based on your letter received on

19   August 11, 2010 and emails received on August 17, 2010 and September 7, 2010.

20       NDPAC is a nonconnected committee that is incorporated in Virginia and that

21   maintains a post office box in Washington, D.C.  At this time, NDPAC has no physical

22   office.  It filed a statement of organization on July 20, 2000, and has filed regular reports

23   with the Commission since that time.  NDPAC qualified as a multicandidate committee

24   on May 17, 2004.

25       NDPAC intends to make both contributions to candidates and independent

26   expenditures.  NDPAC will incur administrative and operating expenses, as well as

AO 2010-20
Revised Draft A
Page 2

1.  fundraising costs.  NDPAC will accept unlimited contributions from individuals, other

2   political committees, corporations, and labor organizations for the purpose of making

3   independent expenditures, or paying for administrative and operating expenses, but

4   NDPAC will not accept contributions from foreign nationals or Federal contractors,

5   national banks, or organizations organized by act of Congress.  NDPAC will maintain

6   two separate bank accounts.  It will deposit in one account all contributions it receives

7   that will be used for making independent expenditures.  The second account will contain

8   all contributions it receives to make contributions to candidates.  The contributions

9   deposited in the second account will comply with the Act's amount limitations and

10  source prohibitions.

11      NDPAC will maintain records for each account, and fully disclose all receipts and

12  disbursements on the reports it files with the Commission as required by the Act and

13  Commission regulations.

14  *Legal Background*

15      The Act and Commission regulations prohibit any individual from making

16  contributions that in the aggregate exceed $5,000 per year to a political committee that is

17  not an authorized committee of a candidate or a political party committee.  2 U.S.C.

18  441a(a)(1)(C); 11 CFR 110.1(d).  In addition, the Act and Commission regulations

19  prohibit any individual from making contributions to political committees (that are not

20  national party committees), which in the aggregate exceed $69,900 per biennial period.

21  2 U.S.C. 441a(a)(3)(B); 11 CFR 110.5.[1]  The Act and Commission regulations also limit

22  contributions made by multicandidate political committees (that are not national party

---

[1] Similarly, the Act prohibits political committees from knowingly accepting contributions in excess of
these limitations.  2 U.S.C. 441a(f).

AO 2010-20
Revised Draft A
Page 3

1    committees) to $5,000 per year.  441a(a)(2)(C); 11 CFR 110.2(d). .Finally, the Act and

2    Commission regulations prohibit corporations and labor organizations from making

3    contributions.  2 U.S.C. 441b(a); 11 CFR 114.2(b)(1).

4           The Supreme Court has long distinguished between limits on contributions and on

5    independent expenditures: "Contribution limits ... unlike limits on independent

6    expenditures, have been an accepted means to prevent *quid pro quo* corruption." *Citizens*

7    *United* v. *Federal Election Commission*, 130 S. Ct. 876, 909 (2010) (citation omitted).

8    Restrictions on both the amount and source of contributions received by political

9    committees have been upheld by the Supreme Court as a means of preventing corruption.

10   *See Buckley* v. *Valeo*, 424 U.S. 1, 26-27 (*per curiam*) (upholding individual contribution

11   limits); *California Medical Association* v. *Federal Election Commission*, 453 U.S. 182,

12   197-98 (1981) ("*CalMed*") (same); *Federal Election Commission v. Beaumont*, 539 U.S.

13   146, 154 (2003) (upholding source prohibitions).

14          In *Beaumont*, the Supreme Court recognized that section 441b's corporate

15   contribution "ban was and is intended to prevent corruption or the appearance of

16   corruption" and that "restricting contributions by various organizations hedges against

17   their use as conduits for circumvention of valid contribution limits." *Id.* at 154-55

18   (internal quotation marks omitted).  Likewise, in *CalMed*, the Supreme Court also upheld

19   individual contribution limits to political committees that, in turn, make contributions

20   themselves because such limits are aimed to prevent corruption.  *See* 453 U.S. at 197-98

21   ("Congress enacted § 441a(a)(1)(C) in part to prevent circumvention of the very

22   limitations on contributions that this Court upheld in *Buckley*."); *CalMed*, 453 U.S. 203

23   (Blackmun, J., concurring) ("contributions to multicandidate political committees may be

AO 2010-20
Revised Draft A
Page 4

1    limited to $5,000 per year as a means of preventing evasion of the limitations on

2    contributions to a candidate or his or her authorized campaign committee upheld in

3    *Buckley*").

4           Recent court decisions and Commission advisory opinions have concluded that

5    limits on independent expenditures, and the contributions received by organizations,

6    including political committees, that only make independent expenditures, are not

7    supported by the same corruption and anti-circumvention rationales as contribution

8    limits. *See SpeechNow.org v. FEC*, 599 F.3d 686, 689 (D.C. Cir. 2010) ("*SpeechNow*")

9    (contribution limits of 2 U.S.C. 441a(a)(1)(C) and 441a(a)(3) are unconstitutional as

10   applied to independent expenditure-only political committees); *see also* Advisory

11   Opinions 2010-09 (Club for Growth) and 2010-11 (Commonsense Ten) (concluding that

12   an independent expenditure-only committee may accept unlimited contributions from

13   individuals, political committees, corporations, and labor organizations).  However, each

14   of these decisions and Advisory Opinions was expressly limited to organizations that

15   make only independent expenditures, and that do not make contributions.  *See Citizens*

16   *United*, 130 S.Ct. at 909 ("Citizens United has not made direct contributions to

17   candidates, and it has not suggested that the Court should reconsider whether contribution

18   limits should be subjected to rigorous First Amendment scrutiny.");  *SpeechNow* 599

19   F.3d at 689 ("we only decide these questions as applied to contributions to SpeechNow,

20   an independent expenditure-only group");  Advisory Opinion 2010-09 (Club for Growth)

21   ("because the Committee, like SpeechNow, intends to make only independent

22   expenditures, there is no basis to impose contribution limits on the Committee").

AO 2010-20
Revised Draft A
Page 5

1       In sharp contrast, NDPAC, a political committee that makes contributions to

2   candidates, proposes to establish a separate account for making independent

3   expenditures, and to accept unlimited contributions from individuals, other political

4   committees, corporations, and labor organizations to that account.  Although the

5   Commission has concluded that the Act's amount limitations and source prohibitions do

6   not apply to contributions to a political committee that makes only independent

7   expenditures, *see* Advisory Opinions 2010-09 (Club for Growth) and 2010-11

8   (Commonsense Ten), NDPAC makes both independent expenditures and contributions.

9   The Commission therefore concludes that neither recent court decisions nor these

10   advisory opinions apply to NDPAC, which, like all other committees that make

11   contributions to candidates, remains subject to the Act's amount limitations and source

12   prohibitions.[2]

13   ***Questions Presented***

14   *1.    May NDPAC, a nonconnected committee that makes both contributions and*

15   *independent expenditures, accept unlimited contributions from individuals, other political*

16   *committees, corporations, and labor organizations to make independent expenditures*

17   *only, provided such receipts are held in separate bank accounts by intended use and*

18   *separately accounted for in reporting to the Commission?*

19   *2.    May NDPAC, a nonconnected committee that makes both contributions and*

20   *independent expenditures, allocate any or all of its administrative or operating expenses*

---

[2] The comment submitted by the Center for Competitive Politics underscores this conclusion by drawing attention to the distinction between a union (or corporation) spending its own general treasury funds for independent expenditures or for administering its separate segregated fund (a political committee), and the committee itself making contributions.

AO 2010-20
Revised Draft A
Page 6

1   *between its accounts, including allocating one hundred percent of these expenses from its*

2   *independent expenditure account?*

3   **Legal Analysis and Conclusions**

4   *1.      May NDPAC, a nonconnected committee that makes both contributions and*

5   *independent expenditures, accept unlimited contributions from individuals, other political*

6   *committees, corporations, and labor organizations to make independent expenditures*

7   *only, provided such receipts are held in separate bank accounts by intended use and*

8   *separately accounted for in reporting to the Commission?*

9          No, a nonconnected committee, such as NDPAC, may not accept unlimited

10  contributions from individuals, corporations, labor organizations, or other political

11  committees if it makes both contributions to candidates and independent expenditures.

12         Both the Act and Commission regulations prohibit a political committee from

13  accepting the types of contributions contemplated by NDPAC's request. *See* 2 U.S.C.

14  441a(a)(1)(C) and 441a(f) (limiting individual contributions to $5,000); 2 U.S.C. 441b(a)

15  (prohibiting corporate and labor organization contributions).  Section 441a specifically

16  limits contributions to a political committee from individuals and other political

17  committees to $5,000, while section 441b prohibits the receipt of corporate and labor

18  organization contributions in any amount.  Similarly, Commission regulations prohibit

19  unlimited contributions by individuals or political committees, *see* 11 CFR 110.1(d) and

20  110.2(d), as well as contributions by corporations and labor organizations. *See* 11 CFR

21  114.2(b)(1).  Consequently, the Act's contribution limits and prohibitions prevent

22  NDPAC from accepting the proposed contributions.

AO 2010-20
Revised Draft A
Page 7

1        Further, the Act's amount limits and source prohibitions for contributions to

2    political committees making both contributions and independent expenditures remain

3    fully in effect.  Applying the relevant provisions of the Act and Commission regulations

4    to the request at hand, the Commission concludes that NDPAC may not accept unlimited

5    contributions from individuals, other political committees, corporations, and labor

6    organizations to make independent expenditures.

7    *2.     May NDPAC, a nonconnected committee that makes both contributions and*

8    *independent expenditures, allocate any or all of its administrative or operating expenses*

9    *between its accounts, including allocating one hundred percent of these expenses from its*

10   *independent expenditure account?*

11        No, a nonconnected committee such as NDPAC may not allocate its

12   administrative or operating expenses, including fundraising costs, between separate bank

13   accounts as it sees fit because, as explained in the answer to question one, NDPAC may

14   not use a separate bank account containing impermissible contributions to make

15   independent expenditures if it also makes contributions to candidates.  Moreover,

16   NDPAC's request to support all of its activity, including the making of contributions to

17   candidates using unlimited contributions from individuals, other political committees,

18   corporations, and labor organizations would result in the subsidization of its contributions

19   to candidates and political parties and is therefore directly at odds with the Act's goal of

20   preventing the circumvention of valid contribution limits.[3]

---

[3] In *CalMed*, the Supreme Court concluded that the Act properly prevented such circumvention of
contribution limits:

AO 2010-20
Revised Draft A
Page 9

1        The Commission notes that this advisory opinion implicates issues that may be

2    the subject of a forthcoming rulemaking in response to the *Citizens United*, *SpeechNow*,

3    and *EMILY's List* decisions.  This guidance provided in this advisory opinion is therefore

4    subject to change or invalidation pending the conclusion of that rulemaking.

5

6                                        On behalf of the Commission,
7
8
9
10                                       Matthew S. Petersen
11                                       Chairman

# EXHIBIT C

## FEC Advisory Opinion 2010-20, Draft "B"

# AGENDA DOCUMENT NO. 10-60-A



FEDERAL ELECTION COMMISSION
Washington, DC  20463



FEDERAL ELECTION
COMMISSION
SECRETARIAT

2010 SEP 21  P 4: 02

# AGENDA ITEM

September 21, 2010

For Meeting of  9-23-10

## SUBMITTED LATE

### MEMORANDUM

TO:                The Commission

FROM:          Christopher Hughey  *pch*
               Acting General Counsel

               Rosemary C. Smith  *RCS*
               Associate General Counsel

               Robert M. Knop  *RMK*
               Assistant General Counsel

               William A. Powers  *WAP*
               Attorney

Subject:        Draft AO 2010-20 (NDPAC) – Draft B

        Attached is a proposed draft of the subject advisory opinion.  We have been asked
to place this draft on the agenda for September 23, 2010.

Attachment

1   ADVISORY OPINION 2010-20
2
3   Dan Backer, Esq.
4   DB Capitol Strategies
5   P.O. Box 75021                          **DRAFT B**
6   Washington, D.C. 20013

7

8   Dear Mr. Backer:

9        We are responding to your advisory opinion request on behalf of National

10  Defense PAC ("NDPAC"), concerning the application of the Federal Election Campaign

11  Act of 1971, as amended (the "Act"), and Commission regulations to a proposed plan to

12  accept unlimited contributions from individuals, other political committees, corporations,

13  and labor organizations to fund independent expenditures from a separate bank account,

14  and to allocate the cost of all of the Committee's administrative and operating expenses

15  between accounts as it sees fit, including paying all expenses from its independent

16  spending account.  The Commission concludes that NDPAC may accept unlimited

17  contributions to its separate bank account to fund independent expenditures.  Consistent

18  with the Court of Appeals for the D.C. Circuit's decision in *EMILY's List v. FEC*,

19  NDPAC should allocate its administrative and operating expenses between its accounts in

20  a manner that "'closely' corresponds" to the proportion of its activities funded by each

21  account.

22  ***Background***

23       The facts presented in this advisory opinion are based on your letter received on

24  August 11, 2010 and email received on August 17, 2010.

25       NDPAC is a nonconnected committee that is incorporated in Virginia and that

26  maintains a post office box in Washington, D.C.  At this time, NDPAC has no physical

AO 2010-20
Draft B
Page 2

1   office.  It filed a statement of organization on July 20, 2000, and has filed regular reports

2   with the Commission since that time.  NDPAC qualified as a multicandidate committee

3   on May 17, 2004.

4        NDPAC intends to make both contributions to candidates and independent

5   expenditures.  NDPAC will incur administrative and operating expenses, as well as

6   fundraising costs.  NDPAC will accept unlimited contributions from individuals, other

7   political committees, corporations, and labor organizations for the purpose of making

8   independent expenditures, or paying for administrative and operating expenses, but

9   NDPAC will not accept contributions from foreign nationals or Federal contractors,

10  national banks, or corporations organized by act of Congress.  NDPAC will maintain two

11  separate bank accounts.  It will deposit in one account all contributions it receives that

12  will be used for making independent expenditures  The second account will contain all

13  contributions it receives to make contributions to candidates.  The contributions deposited

14  in the second account will comply with the Act's amount limitations and source

15  prohibitions.

16       NDPAC will maintain records for each account, and fully disclose all receipts and

17  disbursements on the reports it files with the Commission as required by the Act and

18  Commission regulations.

19  *Questions Presented*

20       *1. May NDPAC, a nonconnected committee that makes both contributions and*
21          *independent expenditures, accept unlimited contributions from individuals,*
22          *other political committees, corporations, and labor organizations to make*
23          *independent expenditures only, provided such receipts are held in separate*
24          *bank accounts by intended use and separately accounted for in reporting to*
25          *the Commission?*
26

AO 2010-20
Draft B
Page 3

2.  *May NDPAC, a nonconnected committee that makes both contributions and*
    *independent expenditures, allocate any or all of its administrative or*
    *operating expenses between its accounts, including paying all expenses from*
    *its independent expenditure account?*

**Legal Analysis and Conclusions**

1.  *May NDPAC, a nonconnected committee that makes both contributions and*
    *independent expenditures, accept unlimited contributions from individuals,*
    *other political committees, corporations, and labor organizations to make*
    *independent expenditures only, provided such receipts are held in separate*
    *bank accounts by intended use and separately accounted for in reporting to*
    *the Commission?*

Yes, as a nonconnected committee that makes both contributions and independent

expenditures, NDPAC may accept unlimited contributions from individuals, other

political committees, corporations, and labor organizations so long as it deposits those

funds into a separate bank account, and does not use such funds to make contributions to

Federal candidates, national party committees, or political party committees' Federal

accounts.

The Act and Commission regulations prohibit any individual from making

contributions that, in the aggregate exceed $5,000 per year to a political committee that is

not an authorized committee of a candidate or a political party committee.  2 U.S.C.

441a(a)(1)(C); 11 CFR 110.1(d).  In addition, the Act and Commission regulations

prohibit any individual from making contributions to political committees that are not

national party committees which, in the aggregate, exceed $69,900 per biennial period.

2 U.S.C. 441a(a)(3)(B); 11 CFR 110.5.[1]  The Act and Commission regulations also limit

contributions made by multicandidate political committees that are not national party

committees to $5,000 per year.  441a(a)(2)(C); 11 CFR 110.2(d).  Further, the Act and

---

[1] Similarly, the Act prohibits political committees from knowingly accepting contributions in excess of
these limitations.  2 U.S.C. 441a(f).

AO 2010-20
Draft B
Page 4

1    Commission regulations prohibit corporations and labor organizations from making

2    contributions.  2 U.S.C. 441b(a); 11 CFR 114.2(b)(1).  Finally, political committees must

3    organize, register, and report pursuant to the Act and Commission regulations.

4    *See* 2 U.S.C. 432, 433, and 434; *see also* 11 CFR 102.1, 102.2, 102.7, and Part 104.

5             Recently, the U.S. Court of Appeals for the District of Columbia Circuit held that

6    "the contribution limits of 2 U.S.C. 441a(a)(1)(C) and 441a(a)(3) are unconstitutional as

7    applied to individuals' contributions to SpeechNow," an independent expenditure-only

8    group.  *See SpeechNow.org v. FEC*, 599 F.3d 686, 689 (D.C. Cir. 2010) ("*SpeechNow*").[2]

9    The D.C. Circuit also held that "non-profit entities are entitled to make their expenditures

10   – such as advertisements, get-out-the-vote efforts, and voter registration drives – out of a

11   soft-money or general treasury account that is not subject to source and amount limits."

12   *EMILY's List v. FEC*, 581 F. 3d 1, 12 (D.C. Cir. 2009); *see also id.* at 10 (". . . individual

13   citizens may spend money without limit (apart from the limit on their own contributions

14   to candidates or parties) in support of the election of particular candidates").

15            Moreover, the United States Supreme Court held in *Citizens United* that

16   corporations may make unlimited independent expenditures using corporate treasury

17   funds. *See Citizens United v. FEC*, 130 S. Ct. 876, 913 (2010). The Court of Appeals in

18   *SpeechNow* relied extensively on the Supreme Court's decision in *Citizens United. See*

19   *SpeechNow*, 599 F.3d at 692-96. Following *Citizens United* and *SpeechNow*,

---

[2] The court held, however, that the "reporting requirements of 2 U.S.C. 432, 433, and 434(a) and the organizational requirements of 2 U.S.C. 431(4) and 431(8) can constitutionally be applied to SpeechNow." *See id.*

AO 2010-20
Draft B
Page 5

1    corporations, labor organizations,[3] and political committees may make unlimited

2    independent expenditures from their own funds, and individuals may pool unlimited

3    funds in an independent expenditure-only political committee.

4          The Commission recently concluded in Advisory Opinions 2010-09 (Club for

5    Growth) and 2010-11 (Commonsense Ten), based upon these recent cases, that

6    corporations, labor organizations and political committees also may make unlimited

7    contributions to a noncommected independent expenditure-only committee like

8    Commonsense Ten or an independent expenditure-only committee established by a

9    corporation like Club for Growth.  Given the holdings in *Citizens United* and *SpeechNow*,

10   that "independent expenditures do not lead to, or create the appearance of, *quid pro quo*

11   corruption," *Citizens United*, 130 S.Ct. at 910, the Commission concluded that there was

12   no basis to limit the amount of contributions to an independent expenditure-only

13   committee from individuals, political committees, corporations, and labor organizations.

14   *See* Advisory Opinions 2010-09 (Club for Growth) and 2010-11 (Commonsense Ten).

15         NDPAC differs from SpeechNow, Commonsense Ten, and the political

16   committee to be established by Club for Growth in that the latter three political

17   committees sought to make only independent expenditures, while NDPAC makes both

18   independent expenditures and contributions to candidates.  However, this difference does

19   not affect NDPAC's ability to accept unlimited contributions from individuals,

20   corporations, other political committees, and labor organizations in order to fund

---

[3] Although *Citizens United* did not directly address whether labor organizations also have a First Amendment right to use their general treasury funds for independent expenditures and electioneering communications, the Act and Commission regulations generally treat labor organizations in the same way as corporations.  The Court's decision suggests no basis for treating labor organization communications differently than corporate communications under the First Amendment.

AO 2010-20
Draft B
Page 6

1   independent expenditures. *See EMILY's List.* It merely has to establish a separate

2   account to do so.

3          According to the court:

4          The constitutional principles that govern such a hybrid non-profit entity
5          follow ineluctably from the well-established principles governing the other
6          two categories of non-profits. To prevent circumvention of contribution
7          limits by individual donors, non-profit entities may be required to make
8          their own contributions to federal candidates and parties out of a hard-
9          money account-that is, an account subject to source and amount
10         limitations ($5000 annually per contributor). Similarly, non-profits also
11         may be compelled to use their hard-money accounts to pay an
12         appropriately tailored share of administrative expenses associated with
13         their contributions. *See Cal-Med,* 453 U.S. at 198-99 n. 19, 101 S.Ct.
14         2712 (opinion of Marshall, J.). But non-profit entities are entitled to make
15         their expenditures-such as advertisements, get-out-the-vote efforts, and
16         voter registration drives-out of a soft-money or general treasury account
17         that is not subject to source and amount limits. Stated another way: A
18         non-profit that makes expenditures to support federal candidates does not
19         suddenly forfeit its First Amendment rights when it decides also to make
20         direct contributions to parties or candidates. Rather, it simply must
21         ensure, to avoid circumvention of individual contribution limits by its
22         donors, that its contributions to parties or candidates come from a hard-
23         money account.
24
25   *EMILY's List,* 581 F.3d at 12. The court further noted that, "[i]f *Austin* were overruled,

26   then non-profits would be able to make unlimited express-advocacy expenditures from

27   their soft-money accounts even if they accepted donations from for-profit corporations or

28   unions to those accounts." *Id.* at 12 n.11.

29          NDPAC, like EMILY's List, is a "hybrid" entity that focuses on both direct

30   contributions to Federal candidates as well as independent expenditures. *Id.* at 12.

31   Although 2 U.S.C. 441a(a)(1)(C) would still appear, on its face, to continue to apply even

32   to these types of hybrid non-profit entities, under *Citizens United, EMILY's List,* and

AO 2010-20
Draft B
Page 7

1   *SpeechNow*, the rationale for limiting contributions to a political committee's

2   independent-spending account is no longer supportable.  *See* AOs 2010-09 and 2010-11.

3           Accordingly, the Commission concludes that a political committee that makes

4   both contributions and independent expenditures, such as NDPAC, may make its

5   independent expenditures using an independent spending account that is wholly separate

6   from the account it uses to make contributions to candidates and political parties.[4]

7   Therefore, the Commission concludes that NDPAC may accept unlimited contributions

8   from individuals, other political committees, corporations, and labor organizations so

9   long as it uses these contributions only for independent spending (as opposed to

10  contributions to Federal candidates) and the administrative expenses discussed below,

11  and so long as it uses a separate bank account to do so.

12          2.  *May NDPAC, a nonconnected committee that makes both contributions and*
13              *independent expenditures, allocate any or all of its administrative or*
14              *operating expenses between its accounts, including paying all expenses from*
15              *its independent expenditure account?*
16
17          NDPAC may allocate its administrative and operating expenses between its

18  accounts in a manner that "'closely' corresponds" to the proportion of its activities

19  funded by each account, such as the amount of federal contributions as compared to its

20  spending on independent electoral activity.

---

[4] The Commission notes that, in the alternative, those persons who created and operate NDPAC may
establish a separate political committee to make independent expenditures using contributions not subject
to the amount limitations and source prohibitions of the Act.  *See* Advisory Opinions 2010-09 (Club for
Growth) and 2010-11 (Commonsense Ten).  Through the establishment of an independent expenditure-only
political committee, these persons may engage in the same type of independent speech as they seek to do
through the acceptance of unlimited contributions into a separate account.  Moreover, a separate political
committee that engages only in independent spending would not be subject to the Act's contributions limits
otherwise applicable to NDPAC under the Commission's traditional affiliation analysis at 11 CFR
110.3(a)(1), since contributions to such committees cannot constitutionally be limited under *Citizens
United, SpeechNow,* and *EMILY's List.*

AO 2010-20
Draft B
Page 8

1        Neither the Act nor Commission regulations currently prescribe an allocation

2    regime for a nonconnected committee that makes both independent expenditures and

3    contributions to candidates.  The Commission repealed 11 CFR 106.6(c), which

4    prescribed the allocation ratio for administrative expenses, because this rule was vacated

5    by the court in *EMILY's List*.  *See* Final Rules, Funds Received in Response to

6    Solicitations; Allocation of Expenses by Separate Segregated Funds and Nonconnected

7    Committees, 75 FR 13223 (Mar. 19, 2010).  Without regulations prescribing the

8    allocation of administrative expenses, nonconnected committees should allocate their

9    administrative expenses in a manner that "'closely' corresponds to the percentage of

10   activities relating to its contributions as compared to its advertisements, get-out-the-vote

11   efforts, and voter registration activities."  *See EMILY's List*, 581 F.3d at 12 (citing *Davis*

12   *v. FEC*, 128 S. Ct. 2759, 2770 (2008); *CalMed*, 453 U.S. at 198-99 n.19).  One

13   acceptable method is to allocate according to the percentage of NDPAC's Federal

14   contributions as compared to the percentage of its disbursements for all other independent

15   spending.  In doing so, the NDPAC may determine the allocation ratio either on an

16   estimated funds spent method (a forward looking estimate of spending over the election

17   cycle) or an actual funds spent method (reflecting actual spending during the reporting

18   period).  This is not necessarily the only acceptable allocation method under *EMILY's*

19   *List*.

20        NDPAC must report all contributions to, and expenditures from, its proposed

21   independent expenditure account pursuant to the Act and Commission regulations.

22   *See* 2 U.S.C. 434; 11 CFR Part 104.  Though these contributions would normally be

23   disclosed on Line 11(a) of Form 3X, there is not, at present, a clear way to distinguish on

AO 2010-20
Draft B
Page 9

1   Line 11(a) between contributions deposited into the general account and contributions

2   deposited into the independent expenditure account.  Accordingly, at present

3   contributions deposited into the independent expenditure account should be reported on

4   Line 17 of Form 3X titled "Other Federal Receipts" accompanied by a memo text to state

5   when a receipt that is itemized on Schedule A has been deposited into the independent

6   expenditure account.

7        For similar reasons, disbursements for administrative/operating expenses made

8   from NDPAC's independent expenditure account should be disclosed on Line 29 of Form

9   3X titled "Other Disbursements" (as opposed to Line 21(b) of Form 3X) and should

10  include a memo text to state when a disbursement that is itemized on Schedule B was

11  made from the independent expenditure account.[5]

12       This response constitutes an advisory opinion concerning the application of the

13  Act and Commission regulations to the specific transaction or activity set forth in your

14  request.  *See* 2 U.S.C. 437f. The Commission emphasizes that, if there is a change in any

15  of the facts or assumptions presented, and such facts or assumptions are material to a

16  conclusion presented in this advisory opinion, then the requestor may not rely on that

17  conclusion as support for its proposed activity.  Any person involved in any specific

18  transaction or activity which is indistinguishable in all its material aspects from the

19  transaction or activity with respect to which this advisory opinion is rendered may rely on

20  this advisory opinion.  *See* 2 U.S.C. 437f(c)(1)(B).  Please note the analysis or

21  conclusions in this advisory opinion may be affected by subsequent developments in the

---

[5] Independent Expenditures should be disclosed on Schedule E for Line 24 of Form 3X and a memo text included to state when a disbursement that is itemized on Schedule E was made from the independent expenditure account.

AO 2010-20
Draft B
Page 10

1    law including, but not limited to, statutes, regulations, advisory opinions, and case law.

2    The cited advisory opinions are available on the Commission's Web site at

3    http://saos.nictusa.com/saos/searchao.

4           The Commission notes that this advisory opinion implicates issues that may be

5    the subject of a forthcoming rulemaking in response to the *Citizens United*, *SpeechNow*,

6    and *EMILY's List* decisions.  This guidance provided in this advisory opinion is,

7    therefore, subject to change or invalidation pending the conclusion of that rulemaking.

8

9                                            On behalf of the Commission,
10
11
12
13                                           Matthew S. Petersen
14                                           Chairman

# EXHIBIT D
FEC Certification of failure to approve either draft Advisory Opinion

BEFORE THE FEDERAL ELECTION COMMISSION

In the Matter of              )

                                 )   AO 2010-20

National Defense PAC       )   Agenda Documents No. 10-60, No. 10-
                                   60-A and No. 10-60-B

## CERTIFICATION

I, Shawn Woodhead Werth, recording secretary of the Federal Election Commission open

meeting on September 23, 2010 do hereby certify that the Commission took the following

actions in the above-captioned matter:

1. Failed by a vote of 2-3 to pass a motion to:

    Adopt Agenda Document No. 10-60-B, revised Draft A in Advisory Opinion 2010-20,
    National Defense PAC.

Commissioners Bauerly and Weintraub affirmatively voted for the motion. Commissioners

Hunter, McGahn II and Petersen dissented. Commissioner Walther did not vote.

2. Failed by a vote of 3-2 to pass a motion to:

    Adopt Agenda Document No. 10-60-A, Draft B of Advisory Opinion 2010-20.

Commissioners Hunter, McGahn II and Petersen affirmatively voted for the motion.

Commissioners Bauerly and Weintraub dissented. Commissioner Walther did not vote.

Attest:

_September 28, 2010_
    Date

_Shawn Woodhead Werth_

Shawn Woodhead Werth
Secretary and Clerk of the Commission

# EXHIBIT E
## 2010 Endorsements by National Defense PAC

National Defense PAC
2010 Endorsements

| Results | First | Last | State | Race |
|---|---|---|---|---|
| lost General | Stephen | Bailey | Colorado | 2 |
| lost General | Sean | Bielat | Massachusetts | 4 |
| Won General | Scott | Brown | Massachusetts | Senate |
| lost Primary | David | Castillo | Washington | 3 |
| lost Primary | William | Clegg | Rhode Island | 2 |
| Won General | Rick | Crawford | Arkansas | 1 |
| lost Primary | Paul | Crespo | Florida | 25 |
| lost General | Vince | Danet | Virgin Islands | Delegate |
| lost General | Charles | Djou | Hawaii | 1 |
| lost Primary | Dave | Evans | Tennessee | 6 |
| Won General | Chris | Gibson | New York | 20 |
| Won General | Tim | Griffin | Arkansas | 2 |
| lost Primary | Bill | Hardiman | Michigan | 3 |
| Won General | Andy | Harris | Maryland | 1 |
| lost Primary | Doug | Hoffman | New York | 23 |
| lost General | Harold | Johnson | North Carolina | 8 |
| Won General | Bill | Johnson | Ohio | 6 |
| Won General | Adam | Kinzinger | Illinois | 11 |
| Won General | Mark | Kirk | Illinois | Senate |
| lost General | York | Kleinhandler | New York | 17 |
| lost General | Savas | Kyriakidis | Tennessee | 3 |
| lost Primary | Stephen | Labate | New York | 2 |
| lost General | John | Loughlin | Rhode Island | 1 |
| lost Primary | Bob | McConnell | Colorado | 3 |
| lost Primary | Bert | Mizusawa | Virginia | 2 |
| lost General | Patrick | Murray | Virginia | 8 |
| lost General | Ilario | Pantano | North Carolina | 7 |
| Won General | Steve | Pearce | New Mexico | 2 |
| Won General | Michael | Pompeo | Kansas | 4 |
| lost General | Rocky | Raczkowski | Michigan | 9 |
| lost Primary | Brian | Rooney | Michigan | 7 |
| lost Primary | Roger | Roth | Wisconsin | 8 |
| lost Primary | Frank | Ryan | Pennsylvania | 17 |
| Won General | John | Shimkus | Illinois | 19 |
| lost Primary | Lang | Sias | Colorado | 7 |
| lost Primary | Rob | Simmons | Connecticut | Senate |
| lost General | Charles | Thompson | Oklahoma | 2 |
| lost General | Tom | Watson | California | 23 |
| Won General | Allen | West | Florida | 22 |
| Won General | Joe | Wilson | South Carolina | 2 |

# EXHIBIT F

Proposed online banner advertisement and script
of 'click through page' in opposition to
Congressman Anthony Weiner





**Why the National Defense PAC urges you to vote Anthony Weiner out of office.**
*A message from our Chairman*

I've never met the man, but I heard him several times in the past 3 weeks on various TV shows debating and defending the Democratic position with regard to the Death Tax.

The distinct impression I got from watching him several times is that this is a leftist socialist-leaning individual who is so blinded by his political philosophy that he will not be satisfied until he has bled the last American citizen out of every last penny he can shake from their pockets, even after they are dead.

And his premise seems to be so HE, who did nothing to earn it, and not ME who did earn it, can share it with others that he feels he'd like to have more money even though they have done zero to earn it.  His policies as he stated are so disgustingly communist oriented - to take away from those who worked for it to give to those who have done zero to earn it, every penny that he possibly can.

This is not the purpose of my government or the Congress or it's elected officials.  We should be particularly disgusted with the arrogant manner and demeanor displayed by this nanny-state social-welfare advocate as he talks down his nose to those of us who get up every morning and go to work.  We have already been taxed by the federal government and the state government on our earnings, and now have this righteous know-it-all overbearing abrasive *Communist* lecturing on why it is his right to take our earnings away from us and give them to whomever he chooses.

His policies will ruin our free enterprise nation and will result in all the wondrous advantages of living in Cuba or North Korea.

In my opinion, Congressman Weiner does not have the right to address me nor the rest of the citizenry in the manner in which he does, and I resent him doing so.  If he wants to preach that for the taxpayers in his Congressional District, that is his right, but his advocacy for him wanting to put such programs in place for the rest of us, over whom he has zero jurisdiction, is insulting and disgusting and outrageous

If you share our views, if you are as determined as we are to end the Socialist nanny-state and all its failed policies, join us in defeating Anthony Weiner.

# EXHIBIT G
Letter of Intent from Contributor (Kelly Eustis)

FROM THE DESK OF

# KELLY S. EUSTIS

January 25, 2011

Rear Admiral James J Carey [Ret.]

Chairman & Treasurer, National Defense PAC

6022 Knights Ridge Way

Alexandria, VA 22310

Re:     Letter of intent to contribute $6300 to National Defense PAC in support of
        Independent Expenditure activities if permitted by law.

Dear Admiral Carey,

Please accept this letter as a firm statement of my intent to support the Independent
Expenditure advocacy of the National Defense PAC.  I share your views as to the
importance of defeating Congressman Anthony Weiner of New York in the next election,
and want to join you in advocating for his defeat.

I am only willing to contribute if my contribution will be able to have an actual impact,
and if it is legal to do so under federal election law.  As such, I will contribute $6300,
which is the cost you have shared with me to mount an online campaign in opposition to
Congressman Weiner.  Further, I await clarification from your counsel that my
contribution exclusively to your independent expenditure activities is lawful, as
determined by either the Federal Election Commission or the courts.

Sincerely,

Kelly S. Eustis

1431 Q Street

Apt. 130

Sacramento, California 95811

# EXHIBIT H
## Bylaws of National Defense PAC

# BYLAWS

*of the*

# NATIONAL DEFENSE POLITICAL ACTION COMMITTEE

## ARTICLE I
### Name

The Name of this Organization shall be the National Defense Political Action Committee, hereinafter "NDPAC".

## ARTICLE II
### Purposes

The purpose for which NDPAC is to operate is as a Political Action Committee for the raising and disbursing of funds for political purposes in local, state, and federal elections in compliance with all applicable law.

## ARTICLE III
### Form of Organization

The form of organization of NDPAC shall be a registered non-connected Political Action Committee pursuant to the rules and regulations of the Federal Election Commission (FEC).

## ARTICLE IV
### Officers

NDPAC shall have the following officers.

*Section 1.      Treasurer*

The Treasurer shall fulfill all the duties and responsibilities of the Treasurer of a Political Action Committee pursuant to the regulations of the FEC, and shall have ultimate executive authority for the operations of NDPAC.

*Section 2.      Assistant Treasurer*

The Assistant Treasurer shall fulfill all the duties and responsibilities of the Assistant Treasurer of a Political Action Committee pursuant to the regulations of the FEC, and as may be delegated by the Treasurer.  In the absence, unavailability, or incapacity of the Treasurer, the Assistant Treasurer shall assume his duties until such time as the Board of Directors shall appoint a new Treasurer.

*Section 3.        Executive Director*

The Executive Director shall be the primary officer of NDPAC and shall exercise the customary duties of said officer in the management and operations of NDPAC.

*Section 4.        Secretary & Custodian of Records*

The Secretary & Custodian of Records shall fulfill all the duties and responsibilities of the Custodian of Records of a Political Action Committee pursuant to the regulations of the FEC.

*Section 5.        Dual role.*

Any officer of NDPAC may also serve as a member of the Board of Directors and/or a member of any other board or committee of NDPAC unless otherwise provided herein, and may hold additional office within NDPAC, except that the Treasurer and Assistant Treasurer shall always be two separate persons.


# ARTICLE V
# Board of Directors

The Board of Directors of NDPAC shall govern its business affairs.

*Section 1.        Membership, term, removal, size*

Membership upon the Board of Directors shall be by appointment of the Board of Directors by majority vote, unless otherwise provided.  The term of membership shall be for so long as the Director wishes to remain a member of the Board, subject to removal by a three-fourths (3/4) vote of all other Directors.  The Board of Directors shall not be limited as to size, but shall at all times have at least one (1) member.

*Section 2.        Role*

The Board of Directors role shall exercise the customary duties and responsibilities of a Board of Directors of an unincorporated association in Virginia, and of a Political Action Committee as governed by the rules and regulations of the Federal Elections Commission.  The Board of Directors shall appoint or remove by majority vote all officers of NDPAC.

*Section 3.        Candidate Contribution Decisions*

The Board of Directors shall approve by a majority vote any proposed contribution to a political candidate by its own motion, or as brought before it by the Executive Director, or by any committee established for the purpose of making such recommendations whether or not such committee has any Directors serving on it.

*Section 4.     Independent Expenditure Decisions*

The Board of Directors shall approve by a majority vote any proposed Independent Expenditure or Electioneering Communication as those terms are used by the FEC by its own motion, or as brought before it by the Executive Director, or by any committee established for the purpose of making such recommendations whether or not such committee has any Directors serving on it.

In the making of any Independent Expenditure, NDPAC shall engage in no form of coordination as that term is defined by the FEC with any political party, candidate, candidates committee, their staff, or other agents.  Any Director whose participation in a vote of approval may cause or indicate instances of improper coordination shall recuse him or herself.

*Section 4.     Dual Role*

Individual members of the Board of Directors may also serve as officers, members of any Board or committee, employees, or agents of NDPAC in addition to serving as members of the Board of Directors.

## ARTICLE VIII
## Amendments

The bylaws may be amended by a majority vote of the Board of Directors.

| Effective as of January 2, 2010, as affirmed by this signature of the Treasurer & Chairman: |
|---|
| 25 JAN 2011 |
| **James J Carey**                                              **(date)** |