UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| REAR ADMIRAL JAMES CAREY (Ret.), *et al.*, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civil Action No. 11-259 (RMC) |
| FEDERAL ELECTION COMMISSION, | ) ) ) | |
| Defendants. | ) ) | |

**MEMORANDUM OPINION**

Rear Adm. (Ret.) James J. Carey, the National Defense Political Action Committee ("NDPAC"), and Kelly S. Eustis filed this suit together with a motion for preliminary injunction, asking the Court to enjoin the Federal Election Commission ("FEC" or "Commission") from enforcing 2 U.S.C. §§ 441a(a)(1)(C) & 441a(a)(3) as applied to contributions to NDPAC and independent expenditures by NDPAC. The Court granted the injunction. *See Carey v. FEC*, 791 F. Supp. 2d 121 (D.D.C. 2011). Subsequently, the parties entered into a consent judgment. As the prevailing party, Plaintiffs now move for costs and attorneys' fees under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412. The motion will be granted in part and denied in part.

**I. FACTS**

**A. Federal Election Campaign Law**

The Federal Election Campaign Act ("FECA"), 2 U.S.C. §§ 431 *et seq*., *inter alia*,

imposes limits on the sources and amounts of contributions[1] that may be made by individuals and groups to federal candidates, party committees, and political action committees. Key to assessing these limits is the identity of the receiver of those contributions and the purpose for which contributions are expended. If contributions are directed toward a federal candidate's personal coffers, a candidate's political action committee, or a committee of a political party, they are subject to statutory limits because of the "strong governmental interest in combating corruption and the appearance thereof" and because of the "close relationship between candidates and parties." *EMILY's List v. FEC*, 581 F.3d 1, 8-9 (D.C. Cir. 2009). Section 441a(a)(1)(C) provides that no person shall make contributions "to any other political committee . . . in any calendar year which, in the aggregate, exceed $5,000." 2 U.S.C. § 441a(a)(1)(C). Section 441a(a)(3) provides:

> During the period which begins on January 1 of an odd-numbered year and ends on December 31 of the next even-numbered year, no individual may make contributions aggregating more than –
>
> (A) $37,500, in the case of contributions to candidates and the authorized committees of candidates;
>
> (B) $57,500, in the case of any other contributions, of which not more than $37,500 may be attributable to political committees which are not political committees of national political parties.

*Id*. § 441a(a)(3). All contributions and expenditures made subject to these source and amount limitations are referred to as "hard money." *See EMILY's List*, 581 F.3d at 27.

Under §§ 441a(a)(1)(C) & 441a(a)(3), there is no distinction made between

---

[1] Under FECA, a contribution is "any gift, subscription, loan, advance, or deposit of money or anything of value made by any person for the purpose of influencing any election for Federal office; or the payment by any person of compensation for the personal services of another person which are rendered to a political committee without charge for any purpose." 2 U.S.C. § 431(8).

political committees directly associated with parties/federal candidates and non-connected political action committees.[2] No distinction need be made if the non-connected political action committee is merely funneling its contributions to federal candidates, their personal political action committees, or political party committees. *See EMILY's List*, 581 F.3d at 24–26. However, if a non-connected political action committee is making independent expenditures[3] wholly separate from federal candidates or parties, the analysis is different because there is not the same governmental interest in preventing corruption. *See id.* at 9–11.

Recent Supreme Court and D.C. Circuit cases have partially invalidated statutory provisions within FECA with respect to limits placed on contributions for independent expenditures in federal election campaigns. *See Citizens United v. FEC*, 130 S. Ct. 876 (2010); *SpeechNow.org v. FEC*, 599 F.3d 686 (D.C. Cir. 2010); *EMILY's List*, 581 F.3d 1. Contributions for independent expenditures are *not* limited for this purpose and may be made from a "general treasury account that is not subject to source and amount limits," otherwise known as soft money. *See EMILY's List*, 581 F.3d at 27. These cases held that limits on soft money contributions used for independent expenditures are unconstitutional because such a limitation violates a contributor's First Amendment right. *See generally Citizens United*, 130 S. Ct. 876;

---

[2] "'Non-connected' means that the [political action committee] is not a candidate committee, a party committee, or a committee established by a corporation or labor union." *EMILY's List*, 581 F.3d at 15 n.7.

[3] Independent expenditures are "expenditure[s] by a person – (A) expressly advocating the election or defeat of a clearly identified candidate; and (B) that [are] not made in concert or cooperation with or at the request or suggestion of such candidate, the candidate's authorized political committee, or their agents, or a political party committee or its agents." 2 U.S.C. § 431(17).

*SpeechNow.org*, 599 F.3d 686; *EMILY's List*, 581 F.3d 1.[4]

### B. Background

Admiral Carey is the founder and treasurer of NDPAC, a political action committee. NDPAC advocates limited government and enhanced commitment to American's veterans and soldiers. Compl. [Dkt. 1] ¶ 12. It raises and expends funds "in support of candidates for federal office who are military veterans and agree with its values." *Id*. NDPAC "makes contributions to candidates for federal office up to the applicable limit and makes independent expenditures in support or opposition of candidates." *Id*. Ms. Eustis is a potential contributor to NDPAC who would like to contribute more than the amount currently allowed toward NDPAC's independent expenditures in federal campaigns. *Id*. ¶ 13.

On August 11, 2010, Plaintiffs submitted a request for an advisory opinion to the Commission. *See* 2 U.S.C. § 437f (specifying the procedure for requesting advisory opinions). They sought permission to accept unrestricted donations for independent expenditures into one account so long as contributions to candidates were made and administered with restricted donations from a separate account. On September 17, 2010, FEC issued a draft advisory opinion, Draft A, concluding that contributions to NDPAC made to finance independent expenditures were subject to the contribution limits of 2 U.S.C. § 441a(a)(1)(C) and related regulations. Compl., Ex. B. A few days later, on September 21, the Commission issued an alternative draft advisory opinion, Draft B, concluding that contributions to NDPAC made to finance independent

---

[4] These cases also found that hard money limits on expenditures that directly support federal candidates, their authorized committees, or any political committee established and maintained by a national political party are constitutional. *See generally Citizens United*, 130 S. Ct. 876; *SpeechNow.org*, 599 F.3d 686; *EMILY's List*, 581 F.3d 1. Plaintiffs do not contest the Commission's authority to regulate "hard money" under § 441a(a)(1)(A) and (B).

expenditures were *not* subject to such limits. Compl., Ex. C. The Commission failed to approve Draft A by a 2-3 vote and failed to approve Draft B by a 3-2 vote. A binding advisory opinion requires at least four votes.[5]

Unable to obtain a binding and favorable advisory opinion, Plaintiffs filed this suit. Here, they alleged that §§ 441a(a)(1)(C) & 441a(a)(3) imposed unconstitutional limits on amounts an individual may contribute to a non-connected political committee such as NDPAC with respect to independent expenditures. Plaintiffs disputed the constitutionality of *any* limit when those contributions are maintained separately and used for independent federal expenditures. Compl. ¶ 13.

This Court granted Plaintiffs' motion for preliminary injunction. *See Carey v. FEC*, 791 F. Supp. 2d 121 (D.D.C. 2011). FEC had opposed the request for preliminary injunction, failing to appreciate binding precedent: *Citizens United*, 130 S. Ct. 876; *SpeechNow.org*, 599 F.3d 686; and *EMILY's List*, 581 F.3d 1.[6] Before this case was ever filed, *EMILY's List* had clearly and explicitly held, based on prior Supreme Court precedent, that soft

---

[5] There are six commissioners. The sixth did not vote.

[6] The Court noted:

> This Court is instructed and bound by the decisions of the Supreme Court and the D.C. Circuit Court of Appeals. The Commission attempts to limit the scope of the Circuit's recent decision in *EMILY's List* without success. The Circuit's ruling was not limited to the authority of the Commission to issue regulations, as the Commission would posit, but included binding precedent on the constitutional rights of non-connected political committees, which the Commission unpersuasively argues is dicta.

*Carey*, 791 F. Supp. 2d at 129.

money maintained in a separate account was not subject to contribution or expenditure limits:

> First, the Court has held that campaign contributions and expenditures constitute "speech" within the protection of the First Amendment.
>
> . . . .
>
> Second, the Court has ruled that Government cannot limit campaign contributions and expenditures to achieve "equalization" – that is, it cannot restrict the speech of some so that others might have equal voice or influence in the electoral process. In perhaps the most important sentence in the Court's entire campaign finance jurisprudence, *Buckley* [*v. Valeo*, 424 U.S. 1, 48-49 (1976)] stated: "[T]he concept that government may restrict the speech of some elements of our society in order to enhance the relative voice of others is wholly foreign to the First Amendment."
>
> . . . .
>
> Third, the Court has recognized a strong governmental interest in combating corruption and the appearance thereof . . . . This anticorruption interest is implicated by contributions to *candidates* . . . .
> . . . .
>
> Fourth, in applying the anti-corruption rationale, the Court has afforded stronger protection to *expenditures* by citizens and groups . . . than it has provided to their *contributions* to candidates or parties.
>
> . . . .
>
> Fifth, the Court has been somewhat more tolerant of regulation of for-profit corporations and labor unions.
>
> . . . .
>
> To sum up so far: In reconciling the competing interests, the Supreme Court has generally approved statutory limits on *contributions* to candidates and political parties as consistent with the First Amendment. The Court has rejected *expenditure* limits on individuals, groups, candidates, and parties, even though expenditures may confer benefits on candidates.

*Carey*, 791 F. Supp. 2d at 129-30 (citing *EMILY's List*, 581 F.3d at 5-8) (footnotes omitted).

This Court held that *EMILY's List* squarely applies to NDPAC because both

organizations are "hybrid non-profits." *Carey*, 791 F. Supp. 2d at 130. "EMILY's List is a good example of such a hybrid non-profit: It makes expenditures for advertisements, get-out-the-vote efforts, and voter registration drives; it also makes direct contributions to candidates and parties." *EMILY's List*, 581 F.3d at 12. "The constitutional principles that govern such a hybrid non-profit entity follow ineluctably from the well-established principles governing the other two categories of non-profits." *Id.* This Court explained that by maintaining separate accounts for hard and soft money, a hybrid non-profit like NDPAC can raise and spend unlimited funds for independent federal expenditures. Thus, Plaintiffs showed a likelihood of success on the merits, *see Carey*, 791 F. Supp. 2d at 131-32, and satisfied the other criteria for an injunction. *Id.* at 132-36.

On August 19, 2011, these parties all agreed to a Stipulated Order and Consent Judgment, which provides as follows:

> 1. The contribution limits contained in 2 U.S.C. §§ 441a(a)(1)(C) & 441a(a)(3), as well as any implementing regulations, are unconstitutional as applied to contributions NDPAC receives to make independent expenditures.
>
> 2. The Commission shall not enforce 2 U.S.C. §§ 441a(a)(1)(C) & 441a(a)(3), as well as any implementing regulations, against Plaintiffs with regard to contributions NDPAC receives to make independent expenditures, as long as NDPAC maintains separate bank accounts (1) to receive such contributions for the purpose of making independent expenditures, and (2) to receive source- and amount-limited contributions for the purpose of making candidate contributions, and as long as each account pays a percentage of its administrative expenses that closely corresponds to the percentage of activity for that account, and complies with the applicable limits for the source- and amount-limited contributions it receives for the purpose of making candidate contributions.

Order and Judgment [Dkt. 28] at 2-3.

Having prevailed, Plaintiffs seek attorneys' fees and costs pursuant to EAJA. The

Commission agrees to an award of costs,[7] but opposes an award of fees, arguing that its position was substantially justified. The Commission also argues that, even if its position is found not to be substantially justified, the fees sought are excessive.

## II.  LEGAL STANDARD

To qualify for an EAJA award, a plaintiff must establish that he was the prevailing party; the burden then shifts to the government, which may avoid paying an EAJA award if its position was substantially justified. *Id*. § 2412(d)(1).[8] "Substantially justified" means "justified in substance or in the main — that is, justified to a degree that could satisfy a reasonable person." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (internal quotation marks omitted). An agency's position is substantially justified if it is both legally and factually reasonable. *Hill v. Gould*, 555 F.3d 1003, 1006 (D.C. Cir. 2009). The government carries the burden of showing that the underlying agency action giving rise to litigation and its litigation position were substantially justified. *See Wilkett v. Interstate Commerce Comm'n*, 844 F.2d 867, 871 (D.C. Cir. 1988).

---

[7] Plaintiffs request $350 in costs. Costs are recoverable under 28 U.S.C. § 2412(a)(1) and 28 U.S.C. § 1920. Because the Commission does not object, these costs will be awarded to Plaintiffs.

[8] The EAJA provides:

> [A] court shall award to a prevailing party . . . fees and other expenses . . . incurred by that party in any civil action . . . including proceedings for judicial review of agency action, brought by or against the United States . . . unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

28 U.S.C. § 2412(d)(1)(A).

### III.  ANALYSIS

#### A.  The Government's Position Was Not Substantially Justified

The government does not dispute that Plaintiffs qualify as the prevailing party in this litigation.  Instead, the government argues that its position was "substantially justified."  *See* 28 U.S.C. § 2412(d)(1)(A).  The Commission argues that Plaintiffs waived the argument that the FEC's prelitigation position was not justified because Plaintiffs failed to cite *EMILY's List* in their request for an advisory opinion.[9]  The Commission points out that in cases where a plaintiff complains about an administrative action, issues not raised before the agency are deemed waived. Opp. [Dkt. 30] at 9 n.3 (citing *Boivil v. U.S. Airways, Inc.*, 446 F.3d 148 (D.C. Cir. 2006)). Failure to raise an issue, however, is not the same as failure to cite a specific case.  Plaintiff did not fail to make an argument.  They argued to the FEC that limits on soft money contributions used for independent expenditures are unconstitutional.  Further, the FEC is supposed to be an expert on federal election law and its attorneys are required to know the current status of election law, especially Supreme Court and Circuit law.  The FEC was responsible for knowing about the opinion of the D.C. Circuit in *EMILY's List*, as indeed it did.[10]

FEC also erroneously contends that two of its commissioners were reasonable in believing the Circuit opinion in *EMILY's List* was not binding on the agency.  To the contrary, *EMILY's List* is binding precedent in this Circuit,[11] which is where Plaintiffs sought an advisory

---

[9] The Commission does not contend that NDPAC failed to cite *EMILY's List* in this litigation, as the case is cited in the Complaint.  *See* Compl. ¶ 13.

[10] Draft B of the advisory opinion cites *EMILY's List*.  *See* Compl., Ex. C.

[11] *See Industrial Turnaround Corp. v. NLRB*, 115 F.3d 248, 254 (4th Cir. 1997) (agencies must abide by the law of a Circuit within the jurisdiction of that court).

opinion; the FEC ignored *EMILY's List*, and this litigation ensued. Moreover, when *EMILY's List* struck down the regulations at issue there, the Circuit necessarily adjudicated the applicability of the statutory provisions from which the regulations derived. The D.C. Circuit held that "a non profit that makes expenditures and makes contributions to candidates" is "entitled to make their expenditures . . . out of a[n] account that is not subject to source and amount limitations." 581 F.3d at 12. EMILY's List is a non-affiliated organization just like NDPAC. The opinion is determinative of this case. Because the Commission has failed to show that its position was substantially justified in the face of this directly-applicable and binding decision, Plaintiffs are entitled to attorneys' fees under EAJA.

### B. Amount of Attorneys' Fees

Plaintiffs seek $141,253.03 in fees for the work of four attorneys: Dan Backer, Stephen Hoersting, Benjamin Barr, and Allen Dickerson. Mr. Dickerson billed 30.5 hours, at the rate of $181.37 per hour. Mr. Backer billed 304.75 hours through the time of filing the fee petition, plus 15.5 for the reply in support of the fee petition, at the same rate, $181.37 per hour. Mr. Barr billed 99.5 hours, plus 14.75 hours for the reply, at the rate of $200 per hour. Mr. Hoersting billed 204.5 hours, plus 13.25 for the reply, at the rate of $250 per hour.

The FEC contends that the full amount of fees sought – $141,253.03 – is excessive because the case only proceeded through preliminary injunction, not through trial. The FEC ignores the fact that NDPAC should not have had to file this suit at all. Plaintiffs sought an advisory opinion in line with the ruling in *EMILY's List* and when the FEC failed to provide one, this case ensued. In addition to filing the complaint, Plaintiffs filed a motion for a preliminary injunction and a motion to stay discovery. The motions were contested; Plaintiffs prevailed on

both.  Plaintiffs have now filed a fee petition, which has been opposed.  The number of attorney hours billed was reasonable for the work that this case required.

The Commission also contends that emails and conferences among counsel for NDPAC should not be billed.  But Plaintiffs' counsel were justified in coordinating arguments and litigation strategy.  The FEC assails Plaintiffs' lawyers for allegedly not exercising "billing judgment."  Having reviewed the affidavits and billing records, the Court disagrees and finds the hours billed to be reasonable.

### C. Hourly Rate

The hourly rate at which attorneys' fees can be recovered under § 2412(d)(1)(A) is $125 unless a court determines that "an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceeding involved, justifies a higher fee." 28 U.S.C. § 2412(d)(2)(A).  Because the statutory cap was set years ago, in 1996, courts routinely approve cost-of-living adjustments.  *Role Models Am., Inc. v. Brownlee*, 353 F.3d 962, 969 (D.C. Cir. 2004).  As adjusted for cost of living, the standard $125 rate is now $181.37 per hour.  The Commission does not contest this rate.  *See* Opp. at 21 n.6.  Thus, the Plaintiffs counsel shall be compensated at the rate of $181.37 per hour.

Plaintiffs assert that Messrs. Barr ($200/hour) and Hoersting ($250/hour) should be compensated at even higher rates under the "special factor" language of § 2412(d)(2)(A). Plaintiffs base their request on these lawyers' special expertise in election and campaign finance law.  But the D.C. Circuit has rejected the claim that campaign finance and election law experience qualifies counsel for an enhanced fee under EAJA.  *See In re Sealed Case*, 254 F.3d 233, 235-36 (D.C. Cir. 2001) (denying request for enhanced fee in election law case).  In order to

qualify for a higher fee under EAJA, counsel must show "an identifiable practice specialty such as patent law, or knowledge of foreign law or language." *Id*. at 235. The Circuit noted that "[a]lthough federal election law 'involves a complex statutory and regulatory framework, the field is not beyond the grasp of a competent practicing attorney with access to a law library and the other accoutrements of modern legal practice.'" *Id*. at 236 (quoting *Chynoweth v. Sullivan*, 920 F.2d 648, 650 (10th Cir. 1990)). Counsel is not entitled to enhanced rates under the special factor exception "based solely on expertise the lawyer acquired through practice in a specific area of administrative law." *Select Milk Producers, Inc. v. Johanns*, 400 F.3d 939, 950-51 (D.C. Cir. 2005). Attorneys who practice administrative law develop an expertise in a particular regulated industry, and they ordinarily gain the expertise from practice and not from training. *Id*. Because nothing in the EAJA suggests that Congress intended to make all counsel who practice administrative law in a technical field eligible for a fee enhancement, expertise acquired through practice is not deemed to be a special factor warranting fee enhancement. *Id*. (citing *F.J. Vollmer Co. v. Magaw*, 102 F.3d 591, 598-99 (D.C. Cir. 1996)).

Plaintiffs contend that enhanced rates are now justified due to new complexity in election law — that the recent changes in the law have made the field obscure and difficult to master. *See* Reply [Dkt. 33] at 19. Plaintiffs argue that the specialized practice bar for election and campaign finance law requires more than an expertise in administrative law and an understanding of the regulations. They contend:

> [P]ractitioners must be grounded in an obscure and relatively unpracticed area of constitutional law; they must understand the complicated maze of federal administrative law; and they must share a working knowledge of the incredibly intricate operation of campaign finance as it applies on-the-ground to political parties,

speakers, grassroots organizations, and policy groups.

*Id*. at 18-19.  This may be so, but the Court is not convinced that election and campaign finance law has changed so dramatically that binding Circuit precedent can be ignored.  Accordingly, the request for enhanced hourly rates will be denied.

## IV.  CONCLUSION

For the reasons stated, the Court will grant in part and deny in part Plaintiffs' motion for attorneys' fees and costs [Dkt. # 29].  Costs will be awarded in the amount of $350.  Attorneys' fees may be recovered at the rate of $181.37 per hour.  No later than June 4, 2012, Plaintiffs shall file a revised affidavit of fees, together with a proposed order awarding fees, in accordance with this Opinion.  A memorializing Order accompanies this Memorandum Opinion.


DATE:  May 22, 2012                             /s/
                                        ROSEMARY M. COLLYER
                                        United States District Judge